Seymour Zeinfeld, Plaintiff-Appellant, v. Hayes Freight Lines, Inc., an Illinois Corporation and David H. Ratner, Defendants-Appellees.

Gen. No. 51,147.

First District, Second Division.

April 25, 1967.

Elmer Gertz, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Robert F. Hanley, A. Daniel Feldman and David J. Rosso, of Chicago (Isham, Lincoln & Beale, of counsel), for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

This is an action in two counts, the first for libel and the second for interference with contract. The trial court granted defendants' motion for judgment on the pleadings as to Count I on the ground that it stated no cause of action. Summary judgment was granted in favor of defendants as to Count II. Plaintiff appeals from both judgments.

Count I alleged that in the summer of 1958, plaintiff was contemplating the purchase of a home in Park Forest, Illinois, which he intended to finance through a mortgage. The home builder, Park Forest Homes, Inc., sent a form questionnaire to Hayes Freight Lines, Inc., requesting verification of plaintiff's employment by the company. Count I further alleged that defendant Ratner, the president of Hayes Freight Lines, "maliciously, in bad faith and intending to injure plaintiff's good name, reputation and credit," went beyond the formal employment verification request by making response to Park Forest Homes in a letter (hereinafter referred to as the "Park Forest letter") that plaintiff had theretofore been in the employ of Hayes Freight Lines for a period of seven years and was in charge of the books and records of the company; that after his leaving the employ of the company it was discovered that he owed a substantial sum of money to the company; that upon tracing him he offered a compromise; and that under the circumstances it was difficult to give plaintiff any reference. Count I further alleged that defendants intended by the letter to imply that plaintiff was a person of bad reputation and credit and was entitled to no consideration or credit in the purchase of a home or otherwise, and that the letter was so understood by Park Forest Homes which thereafter refused to procure a mortgage for plaintiff.

Plaintiff's offer of proof as to Count I sought to establish by Alvin Clouse, a chief accountant for Hayes Freight Lines, Inc., that plaintiff's borrowings from Hayes Freight Lines were made with the knowledge and approval of the officers of the company; that the loans were carried as "accounts receivable" on the books of the company; and that the plaintiff never requested the accounts to be concealed or misstated. Plaintiff further offered to show that defendant Ratner's remarks led certain friends of plaintiff to believe that plaintiff had improperly manipulated the books of Hayes Freight Lines so as to conceal the indebtedness.

In answer to Count I defendants denied they acted with malice and denied the innuendo alleged in the count with regard to the Park Forest letter. It was affirmatively asserted that the Park Forest letter was written in response to the home builder's inquiry, was intended solely to apprise the builder of the information requested, and that, as such, was a privileged communication.

Count II of the complaint alleged that plaintiff, in May of 1957, sought to leave the employ of Hayes Freight Lines and had communicated this fact to defendant Ratner. The count further alleged that plaintiff sought business associations with representatives of several truck lines who were familiar with plaintiff's work and "had confidence in his integrity and ability" and that in each instance plaintiff received a favorable initial response. It was alleged that the person or firm with whom plaintiff had been in contact refused to have any further dealings with him after plaintiff had discussed the respective situations with Ratner, and that it was plaintiff's information and belief that it was defendants' actions and interposition which prompted such persons or firms to refuse to associate with plaintiff. Count II alleged that defendants' actions in this regard were malicious, wrongful and in violation of plaintiff's rights. Defendants denied the commission of any wrongful or

466

malicious acts or that they in any way interfered with plaintiff's negotiations in this regard.

Plaintiff offered to show as to Count II that a person named Lickerman, one of the individuals with whom he had been negotiating an association in a trucking firm, had stated during the course of his refusal to associate with plaintiff that he had a conversation with Ratner and that Lickerman refused to pursue the subject further. In his deposition, plaintiff made the following statement in connection with defendant Ratner's alleged discussions with plaintiff's prospective business associates: "I am assuming that these people contacted Mr. Ratner and that he had made statements to them. This is my assumption. I have no evidence. Nobody told me about it."

Plaintiff maintains as to Count I that the trial court erred in granting defendants' motion for a judgment on the pleadings for the reason that the Park Forest letter wrongfully imputed to plaintiff a want of integrity in his business capacity that the letter was not a privileged communication in that it went beyond the scope of the employment verification requested by Park Forest Homes, Inc., and that there could have been no privilege in the communication since plaintiff alleged malice in the complaint. We disagree.

A motion for judgment on the pleadings will be allowed when the court is able to determine from the pleadings alone the relative rights of the parties in the subject matter; in passing upon such motion the court must consider only those material facts and allegations which are well pleaded, disregarding all surplusage and conclusory allegations. Proesel v. Myers Pub. Co., 48 Ill App2d 402, 199 NE2d 73; W. Q. O'Neall Co. of Illinois v. Coon Run Drainage and Levee Dist., 319 Ill App 324, 49 NE2d 283. In evaluating the language of the Park Forest letter for the purpose of determining the motion for judgment on the pleadings, the innuendo allegedly contained in the letter alluded to by the plain-

467

tiff in the complaint must be disregarded; the words of the letter must be given their natural and ordinary meaning. LaGrange Press v. Citizen Pub. Co., 252 Ill App 482.

The letter which defendant Ratner wrote in response to the employment verification inquiry of Park Forest Homes, Inc., was as follows:

"Your request for information concerning Mr. Zeinfeld was forwarded to me by Mr. Mattingly for my reply. Mr. Zeinfeld was the controller (sic) of Hayes Freight Lines for seven years and as such was in complete charge of the books and records. After his leaving the company we discovered there was a substantial amount of money owed the company. Upon tracing him he offered to compromise. Under the above circumstances it is difficult for me to give him any reference."

Language which is alleged to be libelous but which is capable of being read innocently must be so read and must be declared nonactionable as a matter of law. John v. Tribune Co., 24 Ill2d 437, 225 NE2d 434; see also Kamsler v. Chicago American Pub. Co., Inc., 82 Ill App2d 86, 225 NE2d 434. Nothing in the letter in the case at bar can be taken as passing upon the integrity of the plaintiff. The language of the letter is capable of an innocent construction. It does not imply that plaintiff is dishonest nor that he had embezzled money or "skipped town owing money," as plaintiff implies. "Owing money" does not mean "embezzling money" nor does "tracing plaintiff" imply that he left town in an attempt to conceal the fact that he owed money.

The wording of the Park Forest letter is strikingly similar to the language used by one of the defendants in the case of Judge v. Rockford Memorial Hospital, 17 Ill App2d 365, 150 NE2d 202. Plaintiff, a registered nurse, charged that defendant had libeled her by means of a statement made by a supervisor nurse to the effect that

several vials of narcotics had disappeared from a locked medicine cabinet in an area where plaintiff had been on duty; that plaintiff was seen taking vials of narcotics although her patients' charts showed administration of other medication; and that at the time when the supervisor interviewed the plaintiff concerning the loss of the narcotics, the plaintiff had "a most unusual and abnormal reaction." The court found that the language did not impute to plaintiff the commission of a crime, that of stealing the narcotics.

■ The Park Forest letter was written by defendant Ratner on behalf of defendant Hayes Freight Lines in response to an inquiry by a party who was interested in checking on plaintiff's job performance in connection with his ability to pay off a mortgage. The question of whether the letter was privileged was one of law for the court. Judge v. Rockford Memorial Hospital, 17 Ill App2d 365, 384, 150 NE2d 202.

■ The Park Forest letter is not libelous per se; plaintiff was consequently required to allege in the complaint something more than the statement was "maliciously made" or that defendants "disliked plaintiff" or "bore him ill will." See De Mott v. Amalgamated Meat Cutters and Butcher Workmen of North America, 157 Cal App2d 13, 320 P2d 50 (1958). Where malice is the foundation of a complaint for libel and the allegation of libel is founded upon facts existing beyond the statement itself, those facts must be alleged in the complaint. Segall v. Lindsay-Schaub Newspapers, Inc., 68 Ill App2d 209, 215 NE2d 295. No specific allegation of malice is made in the complaint, nor are any circumstances alleged which could give rise to an inference that malice prompted the Park Forest letter. Plaintiff does no more than make general and conclusory allegations of malice in Count I, insufficient to overcome the privileged communication of the letter or to state a good cause of action against defendants.

469

Count II of the complaint alleges interference with present and prospective contracts and business associations of plaintiff. The trial court properly rendered summary judgment in favor of defendants based upon the pleadings and other matters before the court, which gave rise to no genuine issue as to any material fact. Ill Rev Stats 1965, c 110, par 57.

The entire Count II is predicated upon conclusions and conjecture. Based upon plaintiff's own testimony in his deposition, the trial court was justified in rendering summary judgment. In testifying concerning the prospective business associations with which defendant Ratner had allegedly interfered, plaintiff made the comment that he assumed that the prospective business associates contacted Mr. Ratner and that he had made statements to them. He stated that this was solely an assumption on his part, for which he had no evidence, and that no one told him about such matters. Plaintiff also stated that he could not recall the names of any persons who informed him concerning defendant Ratner's alleged interference with his business negotiations. (In passing it should be noted that defendants specifically denied having in any way discussed plaintiff with any person with whom he was negotiating the various business deals.) The only matter which remotely bears upon the question of interference with contract is plaintiff's testimony in his deposition concerning his conversation with Mr. Lickerman after Lickerman had declined to go through with a business proposition. Plaintiff stated that Lickerman said that "some information had come to his attention" and that upon pressing Lickerman "about it he mentioned Dave [Ratner's] name," but that Lickerman refused to elaborate. This is no more than conjecture and conclusion on plaintiff's part; merely because the name of defendant Ratner entered into the conversation does not necessarily mean or imply that Ratner had anything to do with the failure of plaintiff's

prospective business association with Lickerman. A further example of the type of grounds upon which plaintiff's claim in this regard is based can be found in his statement that he "admitted at one point that no prospective seller had ever told him that Ratner had interfered in the purchase negotiations. But just as defendants had knowingly and maliciously lied to Park Forest Homes, Inc., it is clear that they may have done so in other instances."

Depositions were given by Clarence Todd and Kern Smith, two of the persons with whom plaintiff had been negotiating and who were named by plaintiff as allegedly having been influenced by Ratner into breaking off negotiations, in which they specifically denied ever having been so influenced. The reasons given by the two men for the failure of the negotiations between plaintiff and themselves were that one of the truck lines received better offers from persons other than plaintiff and that the other line went into bankruptcy. Both men testified categorically that they did not discuss plaintiff with defendant Ratner at any time before or during their negotiations with plaintiff. Mr. Smith further testified that he did not meet Mr. Ratner until several months after the supposed interference had occurred. We are of the opinion that Count II of the complaint as well as the matters filed in support thereof consist of conclusions and conjecture and do not give rise to any genuine issue of material fact. The trial court properly granted summary judgment in favor of the defendant on this count.

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and BRYANT, J., concur.