ROBERT WEINEL, d/b/a Weinel Company of Engineers & Surveyors, Plaintiff-Appellant, v. DARIUS MONKEN *et al.,* Defendant (Capital Cities Media, Inc., Defendant-Appellee).

Fifth District   No. 5—84—0280

Opinion filed June 24, 1985.

Goldenhersh & Goldenhersh, P.C., of Belleville (Marvin W. Goldenhersh

and Murray J. Goldenhersh, of counsel), for appellant.

Robert J. Hayes, of Hayes, Murphy & Hayes, of Belleville, and Robert B. Hoemeke, John M. Hessel, and Joseph E. Martineau, all of Lewis & Rice, of St. Louis, Missouri, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff Robert Weinel appeals from an order of the circuit court of St. Clair County granting summary judgment in favor of defendant Capital Cities Media, Inc. Plaintiff's complaint alleged that defendant had libeled plaintiff by publishing certain false statements, "knowingly and maliciously, and with a reckless disregard for the truth *** for the apparent purpose of notoriety and the financial gain derived thereby." The allegedly libelous statements appeared in the following article in the March 24, 1981, edition of the Belleville News Democrat:

## "MONKEN CRITICIZES SCHAU

By J. G. Maty

Of the News-Democrat

O'FALLON—O'Fallon Township Supervisor candidate Darius Monken says he, not incumbent supervisor Clete Schau can find a way to build a water system for rural township residents.

Monken said he could improve the relationship between the city of O'Fallon and the township—and work towards reaching an agreement for a water supply.

And Monken has criticized Schau for what he called a 'professional trick' on the part of an engineering firm hired by the township to design a water system for rural areas.

According to Monken, the engineering firm—Weinel & Co. Surveyors [*sic*] and Planners of O'Fallon—were to be paid for design work only if grant money was approved for the water line project. But the township in December paid the company $15,000 for the water line plan, even though no funding for the project has been received.

During an interview last week, Monken produced a letter from the company that proposed the company receive payment for its work 'only if grant money for the project is received.'

'It was a professional trick,' Monken said—relating to a long-time relationship between Schau and Weinel Co. Schau has been employed in the past by the company, Monken said.

'There's no truth in that,' Schau said.

Joan Weinel of Weinel Co. said that Monken has also worked

for the company in the past.

Schau said the township was advised by its attorney that the contract with Weinel was binding, and the firm had to be paid for its services.

The grant for the water system had been approved by the federal Farmers Home Administration in 1978, but the grant was lost because the township could not come to an agreement with the city of O'Fallon for a water supply.

A follow-up plan to obtain water from the Summerfield-Lebanon-Mascoutah Water Commission has been proposed, but the high cost and current unavailability of federal funds have derailed that plan.

The water supply agreement between the township and the city was voided after O'Fallon Mayor Roy Smith took office in 1977. The agreement had been hammered out during the administration of former Mayor Gary Mackey, and was opposed by Smith.

Smith said the plan was devised by a group of real estate developers—including the Weinel Co.—to aid their special interests and disguised as a benefit for rural residents."

The article made no mention of the fact that plaintiff had made three proposals to the township regarding plaintiff's professional services. According to a proposal dated March 5, 1974, plaintiff agreed to perform the services without charge unless the township received a government grant. According to a second proposal, also dated March 5, 1974, plaintiff agreed to perform the same services for a fee of $2,500. A third proposal, dated December 6, 1977, was actually ratified by the township trustees. This agreement provided that plaintiff receive $15,000 for the same services offered under the prior proposals. Darius Monken publicly opposed ratification of this agreement at a meeting of the trustees in December 1980 utilizing the term "professional trick" in referring to plaintiff's conduct.

On March 27, 1981, plaintiff filed his complaint against Darius Monken, Roy Smith, and Capital Cities Media, Inc. On February 6, 1984, defendant Capital Cities Media, the only defendant who is a party to this appeal, moved for summary judgment, setting forth the following grounds: (1) plaintiff, a public figure, was unable to establish by clear and convincing evidence that false statements were made with actual knowledge of falsity or with subjective doubts as to their truth; (2) the statements complained about were constitutionally protected statements of opinion; (3) the statements complained about were constitutionally protected under the neutral reportage doctrine;

and (4) the statements complained about were not libelous *per se.*

On April 9, 1984, the trial court granted summary judgment. From the order granting summary judgment and the subsequent order denying plaintiff's motion to vacate the judgment, plaintiff appeals.

The trial court did not specify the ground upon which its decision to grant summary judgment rested. All bases set forth in plaintiff's motion have been argued before this court. We first consider whether plaintiff is properly characterized as a "public figure," subjecting plaintiff to the burden of proving actual malice, as opposed to negligence, on the part of defendant.

■ The characterization of an individual as a "public figure" may rest on one of two foundations. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 351, 41 L. Ed. 2d 789, 812, 94 S. Ct. 2997, 3012.) A person may, in the first instance, achieve such a degree of notoriety that he becomes a public figure for all purposes and in all contexts. A person may, in the second instance, either inject himself into a public controversy or be drawn into such a controversy, thus becoming a public figure for a limited range of issues. 418 U.S. 351, 41 L. Ed. 2d 789, 94 S. Ct. 2997.

■ Plaintiff became the subject of the news story because he entered into a contract with the township of O'Fallon, accepting a commission for a public project which was the subject of controversy. Plaintiff was thus a public figure for the limited range of issues associated with the project (*cf. Turley v. W.T.A.X., Inc.* (1968), 94 Ill. App. 2d 377, 236 N.E.2d 778.) The instant case is distinguishable from *Hutchinson v. Proxmire* (1979), 443 U.S. 111, 61 L. Ed. 2d 411, 99 S. Ct. 2675, cited by plaintiff for the proposition that a person may not be deemed a public figure when the only public controversy into which that person is drawn arises as a result of another's defamatory statement. It is apparent from the record that the plan to construct a new water system for the township was controversial from its inception, and plaintiff's participation necessarily exposed him to public scrutiny and public comment.

■ Having determined that plaintiff is properly characterized as a public figure, we must address the question of whether the record supports the finding that defendant acted with actual malice, *i.e.,* with knowledge that his statements were false or with reckless disregard as to whether they were false. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726.) "The burden of proving 'actual malice' requires the plaintiff to demonstrate with clear and convincing evidence that the defendant

realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." (*Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 511 n.30, 80 L. Ed. 2d 502, 524 n.30, 104 S. Ct. 1949, 1965 n.30.) It is not sufficient to show that the originator of the statement acted maliciously. The test has been aptly delineated by the Illinois Supreme Court in *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 168, 419 N.E.2d 350, *cert. denied* (1981), 451 U.S. 911, 68 L. Ed. 2d 300, 101 S. Ct. 1981:

> "At common law a person who republished a defamatory statement made by another was himself liable for defamation even though he gave the name of the originator [citation]. Although the absolute liability which attached to defamation at common law was supplanted as to public officials and public figures by *New York Times Co. v. Sullivan* and its sequels, the republisher of a defamatory statement made by another remains subject to liability [citation], but he cannot be held liable unless he himself knew at the time when the statement was published that it was false, or acted in reckless disregard of its truth or falsity. It is not sufficient that the originator of the statement made it with actual malice."

Plaintiff contends that the record contains numerous indications of defendant's reckless disregard for the truth of Monken's statement. Plaintiff points to the fact that the reporter, J. G. Maty, according to his second deposition, was aware of the 1977 contract, but failed to make reference to it in his article. Plaintiff also points to the fact that Monken testified that he told Maty that the "professional trick" consisted of plaintiff inducing the township to execute the 1977 contract, while Maty implied that the "professional trick" consisted of Weinel obtaining $15,000 for the project even though grant money was not received by the township. In addition, plaintiff notes that Mayor Smith denied using the words "disguised" or "special interests," and that Maty admits this.[1]

■ While these facts, and others to which plaintiff directs our attention, evince a considerable lack of investigative thoroughness and journalistic clarity, they do not demonstrate that the reporter realized

---

[1] In his affidavit filed in support of his motion for summary judgment, Smith indicated that "the statement attributed to me *** was not a direct quote but was probably a paraphrase from an earlier interview with Maty regarding my opposition to the water project." In his discovery deposition, Maty stated that he could not recall the "exact date" he spoke with Mayor Smith about the water plan, and that he had "paraphrased" the mayor's remarks.

or entertained serious doubt regarding the statement that a "professional trick" had been utilized. While a more conscientious reporter might have refrained from repeating the term "professional trick" until attaining an understanding as to the precise reference of the term, or, assuming such an understanding, have made the reference clear to his readers, the essence of malice is not lack of prudence, but actual awareness of probable falsity. "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." (*St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323, 1325.) The pleadings, depositions, affidavits and other evidence of record are sufficient neither to permit the conclusion that defendant in fact entertained such doubts nor to raise a genuine issue as to whether plaintiff, by clear and convincing evidence, could establish the existence of such doubts. We therefore conclude that summary judgment was properly granted. This conclusion renders unnecessary a consideration of whether defendant's statements constituted libel *per se* or whether the statements were subject to constitutional privilege.

The judgment of the circuit court is affirmed.

Affirmed.

JONES, P.J., and KASSERMAN, J., concur.