H. Kovar, Appellant, v. Julius W. Bremer et al., Appellees.

Opinion filed March 9, 1938.

W. A. MIDDLETON, of Paducah, and GEORGE E. MARTIN, of Mound City, for appellant.

WALTER ROBERTS and H. A. EVANS, both of Metropolis, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff H. Kovar on June 21, 1931 was engaged as pastor of St. John's Evangelical Lutheran Church which is a country church located north of Metropolis in Massac county. This church is a member of the Illinois district of the American Lutheran Church.

Twenty-four of the defendants are members of the church, defendant A. R. Seemon was an ordained minister of the same denomination and the remaining defendant, August Borman was a layman and not affiliated with the church.

Plaintiff instituted this suit against the 26 defendants charging them with a conspiracy to slander and libel him thereby damaging him in his calling and causing him to loose his position as pastor.

On a trial the jury returned a verdict for the defendants and after overruling a motion for a new trial

the court entered judgment on the verdict. The chief errors assigned on this appeal are in reference to rulings on evidence and instructions.

Inasmuch as plaintiff's charges of conspiracy to slander and libel have their inception in a dispute between the pastor and his congregation and the damage claimed in plaintiff's removal from his pastorate, it becomes necessary to briefly review the evidence that caused the dispute and the steps that were taken to effectuate his removal.

Plaintiff was engaged as pastor with an annual salary of $1,200 and parsonage furnished. His selection was by action of the congregation. According to the rules of the church its business affairs were transacted by a council of five selected by the congregation from among its members. This council is called the vestry. Defendant Benjamin W. Korte was elected a member of the vestry and later became its secretary. At a meeting of the vestry in January, 1933, where the finances of the church were under discussion, Korte suggested a reduction of plaintiff's salary. Plaintiff became incensed at Korte over the suggestion and afterwards called at Korte's house and asked him to sign a resignation from the vestry. Korte refused to sign and plaintiff signed Korte's name to it. There is a conflict in the evidence as to whether or not Korte authorized plaintiff to sign, plaintiff claiming that Korte authorized it and Korte denying it. At the subsequent meetings and hearings hereinafter referred to it appears that the issue of the veracity of plaintiff and Korte on this matter always held a prominent place. Many contending that plaintiff was the liar and a few that Korte was in the wrong.

The Sunday following at the regular hours for worship, plaintiff advised the congregation that Korte had willingly resigned and read the purported resignation. After plaintiff had closed the church service, Korte asked the congregation to remain and he announced

that plaintiff's statement about his resignation from the vestry was absolutely false and untrue. Plaintiff then announced that Korte was removed as a member of the vestry.

Thereafter Korte in accordance with the rules of the church denomination addressed a communication to the president of the synod asking for an investigation. The president of the synod attended a meeting of the vestry and endeavored to calm the contending forces. At the close of the meeting it appeared that he had been successful but in a few hours, plaintiff addressed a note to Korte and the whole affair was where it was when the meeting was called. It continued to gain in bitterness and in July a meeting of the congregation was called by the president of the synod. Plaintiff claimed this meeting was surreptitiously called and refused to attend, and contended that none of his followers were notified and were not present. A vote was taken on asking plaintiff for his resignation and resulted in thirty-three for the affirmative and three against. The president of the synod conveyed the result of the vote to plaintiff but he refused to resign. To avoid question of plaintiff's claim that the meeting was not properly called, the president of the synod called another meeting for August 20, 1933, which plaintiff also refused to attend. The congregation again voted in a majority for his resignation. Plaintiff still persisting that he had a right to act as pastor entered the church and preached to the few that gathered. A large majority of the members did not attend.

Plaintiff, according to the church rules, took an appeal from the meeting held August 20 to the board of appeals. The board of appeals was composed of three ordained pastors and two laymen. The board held its hearing September 12, 1933, ratified the action of the congregation held August 20 and notified plaintiff he should resign immediately. Plaintiff refused to abide

the action of the board of appeals, remained in possession of the parsonage and continued to enter the church and preach. There is evidence of other meetings at the church and at a blacksmith shop and school house and perhaps at other places, but all of them, like the ones referred to had as a basis of contention the question whether plaintiff or Korte was the liar, and the removal of plaintiff as their pastor. Notices were posted on the church door by the officers of the church which notice unquestionably was intended to refer to plaintiff and directed that he should not enter the church.

After the rules of the church and the advice and counsel of the president of the synod had failed to settle the troubles the officers of the church caused a demand notice for possession of the parsonage to be served on plaintiff and a forcible entry and detainer suit was instituted before a justice of the peace. Plaintiff was defeated in justice court and he appealed to the circuit court. On a trial with a jury in the circuit court and after the evidence was all introduced, the court entered the role as peacemaker and suggested a settlement of the matters between them. By stipulation, a juror was withdrawn, a judgment of ouster was entered against the plaintiff the trustees paid to the clerk of the court, for plaintiff $409.35, which he accepted. All charges which had been filed against the plaintiff with the president of the synod were to be withdrawn and charges filed by plaintiff were to be withdrawn by him. It was agreed that a compliance with the stipulation should "operate as mutual releases in all matters now or heretofore outstanding between the plaintiff, or any member of said congregation and the defendant." This agreement was reached February 1, 1934. Plaintiff vacated the parsonage in accordance with the stipulation and in March following instituted this suit.

The words of defamation as alleged in the five counts of the complaint were that Reverend Kovar is untruthful, is a perjurer and an extortionist, is a hard boiled liar and there is no truth in him, that he was not fit to be a preacher and many other statements of the same character and import. Each count alleged a conspiracy by all defendants.

Courts have no power to pass upon questions of differences between contending factions of a church society, unless civil or property rights are involved. They will not interfere to control the exercise of ecclesiastical authority not violative of a civil or property right. *German Evangelical, etc. v. Deutsche Evangelisch, etc.,* 246 Ill. 328; *Stallings v. Finney,* 287 Ill. 145.

As grounds for reversal, plaintiff's first contention is that the court erred in admitting in evidence the record in the forcible detainer suit. The only part of the record of that suit introduced was the stipulation of settlement. Defendants pleaded it as a defense, contending that it was a settlement of all matters between the plaintiff and the defendants in the case. It was properly admitted.

Plaintiff's second contention is that the trial court refused to allow the witness Maud Bremingmeyer to testify that she had heard defendant Martin Wittke say that Kovar was a hard boiled liar, an extortionist, a perjurer, a crook and an outlaw.

From an examination of the evidence we infer that the witness was willing to testify for plaintiff but for some reason she could not or would not fix the time and place of the conversation she was undertaking to relate. The court permitted counsel to ask leading questions and made suggestions in reference to the examination of the witness. The efforts of plaintiff's counsel to get this witness to testify covers nine pages of the record.

The court did not reject the evidence as incompetent but on the grounds that a proper foundation had not been proven and properly so.

Plaintiff's further contention is that there was error in the court's refusal of four of his instructions.

The first refused instruction told the jury that even though they found that the defendants came together for a lawful purpose yet if they further found that they combined in attempting to accomplish an unlawful purpose then this might be evidence of a conspiracy to accomplish such purpose.

An actionable conspiracy is a combination to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. To make it actionable the combination must be followed by an overt act. A combination to attempt to do a thing in an unlawful way is not actionable. A mere agreement to do wrong is not actionable and does not become so until the parties to the agreement do an overt act in furtherance of the illegal combination resulting in injury to a third person. The instruction was properly refused.

The other three refused instructions told the jury that if they found there was no conspiracy but that the defendants or some of them had slandered the plaintiff they could return a verdict against the defendants guilty of slander. These instructions authorized a verdict against the defendants as joint tort-feasors.

Two or more individuals uttering the same slanderous words at the same time cannot be sued in an action for slander as joint tort-feasors, the reason being that the oral utterance of defamatory words by one is a complete offense and the wrongful act is committed by the individual uttering the words, so that each speaks for himself and must respond in damages for his own language. *Baker v. Young*, 44 Ill. 42; *Economy L. & P. Co. v. Hiller*, 203 Ill. 518; *Randall Dairy Co. v.*

*Pevely Dairy Co.*, 274 Ill. App. 474. The instructions were properly refused.

Complaint is made of the giving of five of defendants instructions. We have examined them and find that they correctly stated the law as to the issues raised by the pleadings.

Plaintiff alleged as a grounds for a new trial that one of the jurors stated he was related by blood or marriage to a large number of the defendants. This was supported by affidavits. Counter affidavits were filed. It is proven to our satisfaction that the point urged was without foundation in truth or fact.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*