(No. 40218.—

ARLINGTON HEIGHTS NATIONAL BANK, Appellant, *vs.* ARLINGTON HEIGHTS FEDERAL SAVINGS AND LOAN ASSOCIATION *et al.*, Appellees.

*Opinion filed May 18, 1967.—Rehearing denied September 27, 1967.*

ALTHEIMER, GRAY, NAIBURG, STRASBURGER & LAWTON, of Chicago, (SAMUEL T. LAWTON, JR., and DAVID C. BAUM, of counsel,) for appellant.

JURCO, DAMISCH & SINSON, and ANDERSON, DROLET & McDONNELL, both of Chicago, (JAMES R. MITCHELL and LEON LECOUR DROLET, of counsel,) for appellees.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Arlington Heights National Bank, brought an action for damages against defendant, Arlington Heights Federal Savings and Loan Association, and its officers and directors, alleging that they intentionally induced the village of Arlington Heights to breach its contract with plaintiff for vacation of a street in the village. The trial court sustained defendants' motion to dismiss, holding that the complaint as amended was insufficient in law since defendants' actions before the village were privileged. The court entered judgment dismissing the action and awarded costs to the defendants. Plaintiff invokes direct appeal on the ground that the case involves questions arising under the Illinois and Federal constitutions which were raised and passed upon in the trial court, thereby according this court jurisdiction. *Lulay* v. *Peoria Journal-Star, Inc.*, 34 Ill.2d 112.

In substance, the amended complaint averred that plaintiff is a national banking association having its principal place of business in the village of Arlington Heights; that it owns a parcel of land in the village which is bisected by and abuts on both sides a portion of Davis Street; that on May 8, 1963, it entered into a written contract with the village which provided, in part relevant to this appeal, that the village, by proper ordinance of its president and board of trustees, would vacate this portion of Davis Street which vacated portion would become plaintiff's property by opera-

tion of law, and that this contract was valid and enforceable (as held in *Arlington Heights National Bank* v. *Village of Arlington Heights,* 33 Ill.2d 557).

The complaint further alleged that the defendant Savings and Loan Association is a mutual institution with its principal place of business in Arlington Heights; that the individual defendants are its officers and directors; that at all relevant times, the defendants knew of the contract between plaintiff and the village and that, nevertheless, after plaintiff had fully performed and acted in reliance on the contract, each of the individual defendants and an attorney for the association appeared before the village board of trustees on various occasions when the enactment of the vacation ordinance was under consideration and persistently urged the village board to refrain from passing an ordinance in pursuance of the contract; and to enact an ordinance which would constitute a breach of the contract. The complaint specifically alleged that said actions were taken "so that defendant Savings and Loan would wrongfully profit from plaintiff's inability to proceed with its contemplated expansion and improvement pursuant to the allowances and provisions of the contract as aforesaid and to further reserve for itself an unimpaired visual exposure of its premises * * *."

The complaint then charged that as a result of the defendants' acts, the village adopted an ordinance vacating Davis Street which contained many burdensome restrictions on plaintiff in addition to those specified in the contract; that this ordinance did not fulfill the requirements of the contract and its adoption constituted a breach of the contract by the village with plaintiff (as held in 33 Ill.2d 557), and that because of defendants' acts plaintiff was deprived of the benefits of the contract and suffered substantial injury.

Defendants' motion to strike the amended complaint and dismiss the action stated that the complaint showed on its

face that the acts alleged were privileged; that the acts were lawful and justified; that no improper means or methods were resorted to by the defendants; that the acts were performed by defendants to promote and protect the public health, safety and general welfare; that the defendant association and its officers and directors had a right to oppose the passage of an ordinance which they believed to be contrary to the interests of the association and to advocate and support by proper means the passage of an ordinance which they believed to be in the public interest and in the interests of the association; and that to impose tort liability on the defendants under the facts appearing from the amended complaint would violate sections 4 and 17 of article II of the constitution of the State of Illinois and section 4 of article IV, amendment I, and section I of amendment XIV, of the constitution of the United States.

Disposition of this cause is dependent upon the solution of the following queries: (1) were defendants' appearance and conduct before the village board privileged, and (2) if privileged, was the privilege absolute or qualified? A determination of these underlying issues is a prerequisite to deciding the ultimate question of whether plaintiff alleged a proper cause of action in its amended complaint.

Traditionally, the members of legislative and judicial bodies have been accorded absolute privilege in the performance of their official acts and duties (*Tenny v. Brandhove,* 341 U.S. 367, 95 L. Ed. 1019; *Larson v. Doner,* 32 Ill. App. 2d 471; 53 C.J.S. 193, Libel and Slander, par. 105), and it is clear that an individual citizen is similarly privileged to some extent in his appearances and actions before these bodies. This is the only judicial posture that can be maintained and remain consistent with the constitutional guarantees of free speech and the right to petition for redress of grievances. (U.S. Const., amend. I, and amend. XIV, sec. I; Ill. Const., art. II, secs. 4 and 17.) Furthermore, these rights of Federal and State citizenship

are applicable at Federal, State and municipal levels of government in an undiluted form. *Larson* v. *Doner.*

The precise question involved herein is to what extent the acts of a private citizen petitioning his local legislative body are privileged. In resolving this question we are mindful that the rights of free speech and petition have been jealously guarded by our courts, at State and Federal levels, as basic to the very concept of representative government, and that, generally, "The right of the people to inform their representatives in government of their desires with regard to the passage or enforcement of laws cannot properly be made to depend upon their intent in so doing." (*Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.,* 365 U.S. 127, 5 L. Ed. 2d 464.) However, these rights of the individual are not inherently absolute but must be considered in the light of the rights of others, (*United Public Workers of America* v. *Mitchell,* 330 U.S. 75, 91 L. ed. 754; *Times Film Corp.* v. *City of Chicago,* 365 U.S. 43, 5 L. Ed. 2d 403; *Baines* v. *City of Damville,* (4th cir.) 337 F.2d 579) and there are instances where persons, in the exercise of these freedoms, can be subjected to civil liability for their acts or utterances, as in the case of an otherwise privileged libel where there is proof that it was motivated by actual malice. (*New York Times Co.* v. *Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686; *Rosenblatt* v. *Baer,* 383 U.S. 75, 15 L. Ed. 2d 597.) These holdings establish that the right of free speech is not absolutely but only conditionally privileged. We believe that the right of petition should likewise be construed as only conditionally privileged for "It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, * * * and are therefore united in the First Article's assurance." *Thomas* v. *Collins,* 323 U.S. 516, 530, 89 L. Ed. 430, 440.

We hold that a private citizen's acts pursuant to his right to petition a legislative body, be it local or otherwise, are conditionally privileged. It therefore becomes necessary to determine what type or degree of acts by such citizen are outside the ambit of the privilege and, consequently, actionable in an appropriate civil suit. Most courts have held, as the parties hereto agree, that in a tort action for interference with contract wherein the alleged wrongful conduct is conditionally privileged, the plaintiff must show actual malice on the part of the defendant in order to sustain such a cause of action. (*Vanarsdale* v. *Laverty,* 69 Pa. 103; *McKee* v. *Hughes,* 133 Tenn. 455, 181 S.W. 930; *Middlesex Concrete Products & Excavating Corp.* v. *Carteret Industrial Ass'n,* 37 N.J. 507, 181 A.2d 774.) Moreover, we have held in the previously analogized situation involving a tort action for defamation, based on alleged wrongful conduct which is similarly conditionally privileged, that a plaintiff, to state a cause of action, must show that defendant's wrongful conduct was motivated by actual malice. (*Lulay* v. *Peoria Journal-Star.*) With these standards in mind, we proceed to the consideration of the ultimate issue of whether the plaintiff has stated a cause of action in its amended complaint.

As previously mentioned, both parties agree that actual malice must be shown in the instant case; in addition, both agree that ill-will alone is not enough to establish actual malice and there must be a desire to harm, which is independent of and unrelated to a desire to protect the acting party's rights and which is not reasonably related to the defense of a recognized property or social interest. (*Kemp* v. *Division No. 241, Amalgamated Ass'n of Street and Ry. Employees,* 255 Ill. 213; *London Guarantee and Accident Co.* v. *Horn,* 206 Ill. 493.) A further requirement of a legally sufficient complaint is that it set forth factual allegations from which actual malice may reasonably be said to exist as opposed to the bare assertion of actual malice.

*Segall* v. *Lindsay-Schaub Newspapers, Inc.,* 68 Ill. App. 2d 209.

The record before us indicates that the only allegations of malice in the amended complaint are those in paragraph 10 that defendants acted "wrongfully, intentionally and maliciously", and in paragraph 11 that defendants acted "wrongfully and maliciously"; that the defendant association sought to profit by reason of the plaintiff's inability to obtain the advantages of the contract, and that the association sought to protect its "unimpaired visual exposure". In our opinion, malice is not sufficiently pleaded by simply repeating that epithet without any facts tending to support that conclusion, and we therefore find plaintiff's amended complaint insufficient in law.

Moreover, the allegations of the amended complaint negate any inference of actual malice. Paragraph 11, which contains plaintiff's basic allegations of wrongdoing, contains the statement that defendants' actions were in part motivated by their desire to reserve for the association "an unimpaired visual exposure of its premises". In addition to this property interest, the association and individual defendants had a public interest in any vacation ordinance as a local business and as local businessmen since "The public streets are held in trust [by the village] for the use of the public". (*Village of Lombard* v. *Illinois Bell Telephone Co.,* 405 Ill. 209.) These facts indicate that defendants were acting in defense of their property rights, both public and private, and as such their conduct would not fall within the definition of actual malice accepted by the parties. *Kemp* v. *Division No. 241, Amalgamated Ass'n of Street and Ry. Employees.*

The plaintiff failed to state a cause of action and the order of the circuit court of Cook County granting defendants' motion to strike is hereby affirmed.

*Judgment affirmed.*