**M. D. Turley, Plaintiff-Appellant, v. W. T. A. X., Inc., a Corporation, Defendant-Appellee.**

**Gen. No. 10,908.**

Fourth District.

May 6, 1968.

Foreman, Rammelkamp, Bradney & Hall, of Jacksonville, for appellant.

Gillespie, Burke & Gillespie, of Springfield (Louis F. Gillespie, Hugh J. Dobbs, and George B. Gillespie, of counsel), for appellee.

TRAPP, J.

The trial court granted defendant's motion to dismiss plaintiff's amended complaint for libel. Plaintiff appeals.

Plaintiff is a professional architect and structural engineer engaged in the practice of his profession with offices in Springfield, Illinois. Defendant is an Illinois corporation with its radio broadcasting station situated in Springfield.

The alleged libel relates to the services by plaintiff as architect for the design and acquisition of furnishings and equipment for the new County Building in Sangamon County.

The pleadings alleged the following facts: Plaintiff's original specifications called for acquisition by the County of 132 chairs, known as "Steelcase No. 1342, side chair with chrome frame, vinyl upholstery," Manufacturer's Number 1342. The retail price of this chair was $110.

At the public letting of bids, one of the suppliers made an alternate bid with respect to chairs, tendering a bid of 132 chairs known as "GF 40/4." The retail price of such chair it alleged to be $26.95.

On October 20, 1965, and thereafter, the defendant prepared and installed a certain window display in the public display area of a store building located at 223 South Fifth Street, in the downtown area of the City of Springfield. The window display consisted of two chairs, virtually side by side, one chair being the Steelcase Number 1342, with a card on the seat thereof stating: "Steelcase 1342 Retails at $110," the other chair being the GF 40/4 chair with a card on the seat thereof stating: "General Fireproofing 40/4 Retails at $26.95."

A placard was placed on the floor slightly to the left of the Steelcase chair bearing the imprint: "County Building Specs. Called for 132 Chairs Like This." A card comparable in size and printing was placed slightly to the left of the GF 40/4 chair bearing the legend: "County Building Architect Allowed Supplier To Substitute This As Equal." The amended complaint alleges that such legend is false.

379

Counts I, II, III and IV of the amended complaint also allege that on October 12, 1965, the defendant, by its newscaster was present at a meeting held by plaintiff with representatives of the communications media and suppliers, that the newscaster asserted in the presence of all those at the meeting, that Mr. Turley had approved the two chairs in question as equal, and Mr. Turley immediately asserted in response that he had not approved anything; that he would not render an approval until he had a chance to completely inventory the deliveries and check the deliveries item by item and determine exactly what items were located where; that plaintiff further asserted at this same meeting of October 12, 1965, that if in his opinion an item delivered was not an equal to the item specified, an adjustment would have to be made. Counts I, II, III and IV of the amended complaint each allege that, nevertheless, about eight days after the meeting of October 12, 1965, and without any consultation with Turley, the defendant did, on October 20, 1965, publish the said window display and the false statement therein contained; that such publication of the window display was made with actual malice, in that the publication was made by the defendant with knowledge that the statement was false or with reckless disregard of whether it was false or not; and that the publication was made of the plaintiff in his said office, profession and employment. Actual malice is not alleged in Counts V and VI, and special damages are not alleged.

The written judgment order upon which this appeal is taken orders dismissal of the amended complaint on the following grounds: Each Count fails to allege a libel per se and is, therefore, defective in its failure to allege special damages, each Count shows that the plaintiff was a public person and, Counts V and VI are defective for failure to allege special damages and the facts supporting the charges of actual malice. It appears that the trial court concluded that the allegations in Counts I, II, III

and IV were sufficient to allege actual malice under the rule of New York Times Co. v. Sullivan, 11 L Ed2d 686.

The constitutional issue of freedom of the press having been raised by motion, we find that the trial court considered the question of the existence of a qualified privilege. The opinion of the court and his statements in the report of proceedings, as well as the briefs and arguments submitted, refer to plaintiff as having the status both of a public official and a public person. If the former, the rule stated in New York Times Co. v. Sullivan, 376 US 254, 11 L Ed2d 686, applies, while, if the plaintiff has the status of a public person, we must apply a possibly different rule stated in Curtis Pub. Co. v. Butts, 388 US 130, 18 L Ed2d 1094.

█ Under the facts of this case the plaintiff had the status of a public official for purposes of determining the quantum of privilege applicable to the events at issue. In the Law of Torts, 2d ed, 1955, Prosser discusses the nature and extent of qualified or conditional privilege in connection with the law of defamation, chapter 19, § 95. He says, at p 620:

> "The press, or anyone else, is privileged to discuss the administration of public affairs, and the conduct or qualifications of public officers or candidates and public employees as well as work to be paid for out of public funds. . . . in which the public has a legitimate interest."

In the Restatement of the Law of Torts, chapter 25, § 607, it is stated that the privilege of criticism applicable to public officials extends to criticizing the work of independent contractors paid for out of public funds, and the work of employees of such contractors.

The trial court quoted, and apparently relied upon the language from 33 American Jurisprudence, § 166, p 160, as follows:

381

"Thus, it has been held that the architecture of public buildings is a legitimate subject of newspaper criticism. So also, one who takes the position of architect in the construction of a public building is acting as a public official and must expect criticism in the public interest."

The statements of these authorities upon the source and extent of privilege have probably been extended by the decision in Rosenblatt v. Baer, 383 US 75, 15 L Ed2d 597, wherein the United States Supreme Court defined the scope of conditional privilege under constitutional standards as being determined by reference to the function which it serves. In that case the plaintiff was employed to manage a municipal ski resort. The court determined that he had such control and responsibility over governmental affairs, and was in such a position to significantly influence the resolution of issues of public interest as to require his treatment as a public official.

In this case the complaint alleges that the plaintiff supervised the design and construction of the building and that he prepared the specifications upon which bids were taken for chairs and furnishings, and that his services included the acquisition of such items. Plaintiff was thus in a position to significantly influence the construction and furnishings of a public building provided through public funds. The test of significant control is found in the contrasting results in Suchomel v. Suburban Life Newspapers, Inc., 84 Ill App2d 239, 228 NE2d 172, and Coursey v. Greater Niles Tp. Pub. Corp., 82 Ill App2d 76, 227 NE2d 164. In the former case the plaintiff, who was second in command of a police department as well as the community juvenile officer, was held to be a public official within the rule of Times, while in the latter case it was held that a police patrolman was not subject to the rule of qualified privilege.

It being concluded that the plaintiff had the status of a public official which established a qualified

382

privilege, as is conceded by plaintiff at the time of oral argument, the allegation of the complaint must be measured in the light of the rule in New York Times Co. v. Sullivan, 376 US 254, 11 L Ed2d 686. See Grabavoy v. Wilson, 87 Ill App2d 193, 230 NE 581; Suchomel v. Suburban Life Newspapers, Inc., 84 Ill App2d 239, 228 NE2d 172. In Times it is held that the constitutional guarantee of freedom of speech and press prohibit a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice," that is, with knowledge that it was false or with reckless disregard of whether it was false or not. Rosenblatt v. Baer, 383 US 75, 15 L Ed2d 597. In Garrison v. Louisiana, 13 L Ed2d 125 at 133, the basis of liability for libel of a public official was characterized as "calculated falsehood" and we find the language:

> ". . . only those false statements made with the high degree of awareness of their probable falsity demanded by New York Times may be the subject of either civil or criminal sanctions."

█ Plaintiff argues that Counts I, II, III and IV allege actual malice within the rule stated in that facts pleaded show that the matter published was false and that defendant knew that such matters were false. Defendant's motion admitted facts well pleaded. Grabavoy v. Wilson, 87 Ill App2d 193, 230 NE2d 581.

Matters pleaded as fact and so admitted upon motion include allegations that plaintiff prepared the specifications and that the alternate bid was submitted and a contract awarded thereon. It is also alleged to be a fact that the defendant, through its agent, knew (1) that the supplier had submitted a bid upon the alternate described, and (2) that the contract had been awarded upon such alternate bid.

In support of the hypothesis that the facts demonstrate actual malice, plaintiff argues that the matter published by defendant was false, and that such falsity was known to defendant, by reason of statements and remarks interchanged between plaintiff and defendant's newsman at the "press conference." It is pleaded as a fact that at such meeting defendant's agent asserted publicly that plaintiff had approved the alternate chair "as equal to the other chair," to which plaintiff immediately responded that he hadn't approved anything and that he would not render approval until he had a chance to completely inventory the deliveries and check the deliveries, item by item, and that he further stated that if, in plaintiff's opinion, an item was not "an equal to the item specified, a price adjustment would have to be made." The response by plaintiff does not disclose whether the chairs delivered would be required by plaintiff to be equal to the item specified in the original specification, or simply equal to the item specified in the contract awarded. One would expect the chairs that were delivered to be equal to the chairs specified in the contract award, but as plaintiff says in an argument upon another issue, the visual display shows how unequal the chairs actually were. Again, plaintiff's statement concerning the adjustment of price if the chairs delivered failed to equal the chairs "specified" suggests no reasonable relation between the chairs first specified for bidding and those actually ordered. We find some semantic fog in the arguments submitted. In common usage, "alternate" as a noun is defined in terms of, and has as a synonym, the word "substitute." See Webster's Third New International Dictionary, Standard Dictionary of the English Language, Shorter Oxford English Dictionary and Webster's New World Dictionary, College Edition (1960). See also 3 Corpus Juris Secundum 1011.

Upon the bare bones of the event, the award of the alternate contract constituted an acceptance of the chairs

delivered for the uses and purposes of the County building, and, in common language, can be said to be, at least to some degree, approval of a substitute for those uses. Plaintiff's statement or response which purports to establish the falsity of defendant's publication, as well as defendant's knowledge of such falsity, was, in legal jargon, not responsive, and it failed to speak to the issue raised at the press conference.

■ Upon the facts pleaded, including the words specified in plaintiff's response, there is no allegation of fact which can be reasonably construed to show actual malice under the constitutional standards heretofore stated in Times. We cannot say that the publication at issue made a false statement of fact, or was made with a high degree of awareness of probable falsity within the meaning of Garrison.

Plaintiff argues that the display of chairs and accompanying legends constitutes libel per se. It is apparent that the pleading does not charge any criminal act, corruption or conspiracy. There is no contention that the display suggests that the County paid for anything that it did not receive, or that it did not receive value for what it did pay. The thrust of the contention is that defendant asserted that plaintiff permitted the substitution of chairs because they were equal in dollar value. Plaintiff reaches this position by joining or associating the legend, ". . . To Substitute This As Equal:" with the statement of retail price identified with each chair. He concludes that the legends so tacked together result in a statement meaning that the substitution of chairs was permitted because they were equal in money value. Such conclusion is said to be libelous per se as denigrating plaintiff in his profession and as asserted inadequate representation of his client.

■ This argument and contention is founded upon and requires the court to adopt plaintiff's interpretation

of the display a form of innuendo proposed by him. We are concerned with the printed legends in their ordinary meaning without addition or explanation to the sense of the words through innuendo. Gogerty v. Covins, 5 Ill App2d 74, 124 NE2d 602; Whitby v. Associates Discount Corp., 59 Ill App2d 337, 207 NE2d 482.

We find no representation or statement of defendant which asserts that there was a substitution of chairs as, or because, they were equal in dollar value. The words in the legend: ". . . To Substitute This As Equal:" more apparently call for comparison of the beauty of the chairs or speculation as to their relative utility or longevity. The posting of the correct retail price for the respective items belies any contention that a reasonable person would believe that it is asserted by defendant that the County architect had permitted substitution as, or because of, equal dollar value. Whatever criticism of public business resulted was comment upon the fact of the matter.

If this view be in actual doubt, or if it might be said that ordinary reasonable people might draw different conclusions, we are bound to apply the rule stated in John v. Tribune Co., 24 Ill2d 437, 181 NE2d 105, which holds that the allegedly libelous matter is to be read as a whole and words given their natural and obvious meaning, and that where such are capable of being read innocently they must be so read and declared nonactionable as a matter of law. See also Grabavoy v. Wilson, 87 Ill App2d 193, 230 NE2d 581; Zeinfeld v. Hayes Freight Lines, Inc., 82 Ill App2d 463, 226 NE2d 392; Kamsler v. Chicago American Pub. Co. Inc., 82 Ill App2d 86, 225 NE2d 434; and Reed v. Albanese, 78 Ill App2d 53, 223 NE2d 419. A contrasting result where the representation is incapable of innocent construction is found in Coursey v. Greater Niles Tp. Pub. Corp., 82 Ill App 76, 227 NE2d 164.

The conclusions reached upon the several issues considered require affirmance of the order dismissing the complaint.

Affirmed.

CRAVEN and HOFFMAN, JJ., concur.