(No. 40822.-

GEORGE SUCHOMEL, Appellant, *vs.* SUBURBAN LIFE NEWS-PAPERS, INC., *et al.*, Appellees.

*Opinion filed May 29, 1968.*

MARCO AND MANNIA, of Downers Grove, for appellant.

KIRKLAND, ELLIS, HODSON, CHAFFETZ AND MASTERS, of Chicago, (DON H. REUBEN and LAWRENCE GUNNELS, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, George Suchomel, brought this action for libel against several defendants, among them Suburban Life Newspapers, Inc., and one of its reporters, Karl Bell. The circuit court of Cook County granted the motion of the named defendants for summary judgment, and the appellate court affirmed. (84 Ill. App. 2d 239.) We granted leave to appeal.

Several issues are argued in this court, but we find it necessary to consider only, (1) whether the plaintiff, who was Sergeant of Police and Juvenile Officer of the Village of Countryside, was a "public official" within the decision of the United States Supreme Court in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686,

84 S. Ct. 710, and (2) if he was, whether the record discloses the existence of a genuine issue of fact as to whether the defendants published and alleged libel with "actual malice," as that term was defined in the *New York Times* case.

In his complaint, Suchomel alleged that the defendants, "well knowing the premises, but wickedly and maliciously intending to injure [him]   *   *   *   and to bring him in public disgrace and scandal,   *   *   *   wickedly and maliciously composed and published   *   *   *   a certain false, scandalous, malicious and defamatory libel   *   *   *" in the form of a front-page newspaper article. He further alleged that the statements contained in the article were "libelous per se and actionable as a matter of law." The full text of the article follows:

"CITY POLICEMAN ACCUSED OF BURGLARY [headline]
Countryside Sergeant Denies
Charges Brought Before City
Council [sub-headline]
By Karl Bell

For the second time in three months Countryside's police force was placed into the limelight Wednesday when, after a city council meeting, a resident read a statement reportedly received from an area woman who contended, among other things, that Sgt. George Suchomel had twice within the past year, and while on duty made break-ins in the trailer court which is in the city.

According to the statement read by Robert J. Brinkman, 5339 Kensington, the woman, a divorcee and mother of two, also charges that the two often spent 'from one to seven hours' together when the sergeant was supposed to be on the night shift and they spent time drinking liquor in the squad car.

Sgt. Suchomel denied all the charges.

Brinkman refused to identify the writer, although requested by Mayor Melvin F. Eggert. Brinkman stated that her identity has been known to the mayor and to Police Chief John Girard for weeks.

In the statement read by Brinkman, the letter writer claims that the sergeant in uniform and using the squad car, would pick her up and then they would drive to a tavern where he would buy liquor which they would share as they sat in the police car.

The woman contends, according to Brinkman, that Sgt. Suchomel would ignore radio calls and often would lie about the location of the squad car.

Also stated was that several times the sergeant fired his weapon into the air 'for no apparent reason' and that he had twice broken into residences in the trailer court in Countryside.

The letter writer also was quoted as stating that she had informed the sheriff's police about the sergeant's activities and that she later denied them under pressure to do so by the sergeant.

Sgt. Suchomel has denied the allegations.

He told the Suburban LIFE yesterday, 'I was not at the meeting so I can't say I heard the actual statement read by Mr. Brinkman, but I've heard what was read and, except for the fact that I know the woman who I think Mr. Brinkman is referring to, there's not a charge in her statement that is true.

'I've told the mayor I have not done any of these things. So far I haven't been given a chance to formally answer any of the charges, for no formal complaint has been made.'

Brinkman stated that the mayor had known about the contentions, as brought out by the woman, before the mayor read to the council on September 25, a report from the sheriff's office in which the sheriff stated his investigations of earlier charges against the chief and the sergeant had no basis for criminal action.

Brinkman also contended that charges as brought out now by the woman have been confirmed by an investigation of the sheriff's police and that the mayor has received an affidavit from the sheriff's office signed by the woman.

He stated the mayor has been 'holding out' by not disclosing the material to the city council.

Wednesday night the mayor said he would release the contents of the affidavit to the council members.

Mayor Eggert told The Suburban LIFE yesterday that on Thursday he contacted the woman in question and that she implied she would be willing to sign a formal complaint that night.

'The formal complaint was all written up, but when she appeared at the city hall Thursday night she refused to sign. She gave no reason.

'The question now is, inasmuch as no formal charges have been filed, which group can take any legal action, the council or the civil service board through the police commission?'

He said he hoped to secure a legal opinion on the matter by today.

'I think we have to clear the air and see that the man has every right to be heard as to whether he's guilty or innocent. Surely, she also has every right to prove her side.'

Brinkman, along with former officers Richard Kocek and

Richard Martin are defendants in a libel suit brought against them by Police Chief John Girard.

He seeks approximately $200,000 damages from each.

Wednesday night the city council accepted the resignation of Officer Richard Martin."

The original complaint was filed on February 6, 1964. The United States Supreme Court announced its decision in the *New York Times* case on March 9, 1964. More than three months later the plaintiff filed his amended complaint, and more than one year later the defendants moved for summary judgment. In the *New York Times* case the Supreme Court stated: "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279-80, 11 L. Ed. 2d at 706.

In the *New York Times* case the court refused to define the term "public official" (376 U.S. at 283 n.23, 11 L. Ed. 2d at 708, n.23.) Subsequently, however, it has been applied to a variety of law enforcement officers. (*St. Amant* v. *Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, (deputy sheriff in East Baton Rouge Parish, Louisiana); *Henry* v. *Collins* (1965), 380 U.S. 356, 13 L. Ed. 2d 892, 85 S. Ct. 992, (chief of police of Clarksdale, 2 Mississippi); *Pape* v. *Time, Inc.* (1965), 354 F.2d 558, *cert.* denied (1966), 384 U.S. 909, 16 L. Ed. 2d 361 (deputy chief of detectives in Chicago); *Coursey* v. *Greater Niles Township Publishing Corp.* (1968), *post,* at p. 257, (patrolman in Skokie, Ill.).) In *Rosenblatt* v. *Baer* (1966), 383 U.S. 75, 15 L. Ed 2d 597, 86 S. Ct. 669, the Supreme Court stated: "It is clear * * * that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." 383 U.S. at 85, 15 L. Ed.

2d at 605. See also, Kalven, The Reasonable Man and the First Amendment, 1967 Sup. Ct. Rev. 267, 278-90.

Undoubtedly, circumstances could arise in which the application of this test might raise issues for the trier of fact (see *Baer* v. *Rosenblatt* (N.H. 1967), 237 A.2d 130), but in this case the determinative facts have all been admitted in the plaintiff's own deposition which the defendants filed with their motion for summary judgment. Suchomel served as Countryside's Juvenile Officer and Sergeant of Police. He acknowledged that he was second in command to Police Chief Girard; that the two men worked alternative shifts, leaving Suchomel in full charge of the department when Girard was off duty; and that he was "acting chief" with direct supervision over approximately twenty patrolmen and radio operators when Girard was absent from Countryside. It appears, therefore, that he possessed "substantial responsibility for * * * [and] control over the conduct of governmental affairs * * *" (383 U.S. at 85, 15 L. Ed. 2d at 605), and held a position that "would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." (383 U.S. at 87 n.13, 15 L. Ed. 2d at 606 n.13.) On this record, we are compelled to hold as a matter of law that at the time defendants published the article under consideration Suchomel was a "public official" within the rule of *New York Times*.

Since the plaintiff was a public official, before he can recover under the test of the *New York Times* case he must establish that the article was published by the defendants with actual malice—"with knowledge that it was false or with reckless disregard of whether it was false or not." The remaining question, then, is whether, upon the materials before the trial judge in connection with the motion for summary judgment, there was a genuine issue of fact as to the existence of actual malice. In determining this ques-

tion we assume the truth of the plaintiff's allegation that the statements in the article were false.

No affidavits or depositions were tendered by the plaintiff upon the motion for summary judgment. He argues, however, that his amended complaint was itself sufficient to raise a genuine issue of fact as to defendant's actual malice. The amended complaint identifies the plaintiff, alleges his good reputation, and that defendants, "well knowing the premises, but wickedly and maliciously intending to injure the Plaintiff, * * * wickedly and maliciously composed and published * * * a certain false, scandalous, malicious and defamatory libel * * *." These characterizations, however, do not state any facts whatever as to the knowledge of the defendants concerning the statements in the article, or their concern, or lack of concern for the accuracy of those statements. The omitted ingredient of a factual allegation of knowing or reckless disregard of falsity is not supplied by the repetition of adverbs and adjectives.

We do not agree with the plaintiff's contention that " 'Actual malice' under *Times* v. *Sullivan* is apparent on the face of the libelous article", which appears to be a straightforward report of both sides of a public controversy. Nor is there merit in the plaintiff's attack on the summary judgment because it "was granted solely on the defendant's motion * * * and upon the plaintiff's deposition without the opportunity of plaintiff to file affidavits or offer additional evidence regarding the motion." The plaintiff was mailed notice of the defendant's motion on April 15, 1965, and the motion was not granted until two months later, on June 15, 1965. Section 57(3) of the Civil Practice Act expressly provides that "The opposite party may prior to or at the time of the hearing on the motion [for summary judgment] file counteraffidavits." (Ill. Rev. Stat. 1967, chap. 110, par. 57(3).) The following sentence of that section put plaintiff on notice of the possible effect of

his refusal to correct the failure of his pleadings to raise a genuine issue of fact as to defendant's actual malice. "The judgment or decree sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." Ill. Rev. Stat. 1967, chap. 110, par. 57(3).

The judgment of the appellate court is affirmed.

*Judgment affirmed.*