Doctors Convalescent Center, Inc., a Corporation, Plaintiff-Appellant, v. East Shore Newspapers, Inc., a Corporation, Defendant-Appellee.

Gen. No. 68-41.

Fifth District.

December 31, 1968.

Richard Shaikewitz and Emerson Baetz, of Alton, for appellant.

Walker & Williams, of East St. Louis (Ralph Walker and Edward Maag, of counsel), for appellee.

SPIVEY, J.

The Circuit Court of St. Clair County on defendant's motion dismissed plaintiff's cause of action for libel.

The sole question presented is the sufficiency of plaintiff's complaint.

On July 27, 1967, plaintiff filed its complaint alleging that prior to July 14, 1966, it was engaged in the operation of a nursing home for the ill and infirm and that among its patients were subnormal and mentally re-

tarded children, some of which are wards of the State of Illinois, placed in the home by authorized agencies of the State; that it extended to subnormal and mentally retarded children the custody and care required of it and operated the institution under such conditions as are required.

That on or after June 1, 1966, and at times prior and subsequent thereto the defendant, through its editors, reporters, agents and servants, did conspire and confederate with one Jack McAllister, a former convict, Edith Heide, an employee of the Illinois Department of Public Health, William Boyne, Melvin Luna, and other persons unknown to the plaintiff, to cause to be printed, published, circulated and distributed in defendant's newspaper certain statements pertaining to the operations of plaintiff's nursing home and the care of its patients.

The alleged libelous newspaper accounts went into a great amount of detail to describe conditions at the home and its operation; these included lack of adequately trained personnel and supervision, acts of cruelty toward and physical abuse of the patients, lack of medical attention and lack of physical supervision of the patients. The accounts also recited diet deficiencies resulting in malnutrition and lack of sanitary care. The accounts were based on reports and interviews with persons who had visited the home or who had contact with the patients after their transfer to other facilities. They recited the deaths of several of the patients and suggested they resulted from the deficiencies and a substandard operation.

The accounts further charged State authorities with being lax in their responsibility toward their wards at the plaintiff's center, and for shunting responsibility from one to another. It was pointed out that funds for the care of the State's wards are authorized by the State Department of Mental Health, the licensing is delegated

273

by the Department of Public Health to the East Side Health District, and the Department of Children and Family Services placed youngsters in plaintiff's center and no public agency exercised its responsibility in the case.

Plaintiff further alleges that the facts published by defendant are false and that the articles published were and were meant by the defendant to be a single connected attack on the plaintiff, and the intermixture of nonaccusatory assertions was designed to create an atmosphere of authenticity to hurt and damage the plaintiff, and that the conduct of the defendant was malicious and designed to harm the plaintiff in its business.

Several issues have been presented by this appeal, (1) was the subject matter of the several publications of sufficient public interest and concern to permit the application of the qualified or privileged doctrine, (2) the sufficiency of the allegations of the complaint, and (3) the Statute of Limitations.

█ In New York Times v. Sullivan, 376 US 254, 11 L Ed2d 686, it was held that before a public official "May recover in libel it must be established that the article was published by the newspaper with actual malice, that is, with knowledge it was false or with such a reckless disregard of whether it was false or not."

New York Times in itself did not define who may be a public official, however the court quoted with approval Coleman v. MacLennan, 78 Kan 711, 98 P 281, which said, "This privilege extends to a great variety of subjects, and includes matters of pubic concern, public men, and candidates for office."

In his work on the Law of Torts, 2nd Ed, 1955, Prosser in chapter 19, section 95, states at p 620, "The press, or anyone else, is privileged to discuss the administration of public affairs, and the conduct or qualifications of public officers or candidates and public employees as

274

well as work to be paid for out of public funds . . . in which the public has a legitimate interest."

In the Restatement of the Law of Torts, chapter 25, section 607, it is said that the privilege of criticism applicable to public officials extends to criticizing the work of independent contractors paid for out of public funds, and the work of employees of such contractors.

The conditional privilege afforded the press has been held to be applicable to public persons as well as public officials. Curtis Pub. Co. v. Butts, 388 US 130, 18 L Ed2d 1094, 87 S Ct 1975.

In Turley v. W.T.A.X., Inc., 94 Ill App2d 377, 236 NE2d 778, the conditional privilege rule was applied to a professional architect-structural engineer who was employed in his professional capacity to design, acquire furnishings and equipment for a county building in Sangamon County, Illinois.

The Supreme Court of Delaware in News-Journal Co. v. Gallagher (Del), 233 A2d 166 (1967), in holding that the conditional privilege applied to comments made against one who was performing for a fee, work for the State Highway Department in collecting rentals on houses condemned by the Highway Department, had this to say in commenting whether or not the plaintiff was a public officer within the meaning of the New York Times rule, "Whether or not that be true, it cannot be disputed that he was a public figure in the city and county by virtue of his political position. Moreover the publicity arose out of work he was performing for the State."

The Supreme Court of the United States in Rosenblatt v. Baer, 383 US 75, 15 L Ed2d 597, 86 S Ct 669, in determining the status of the superintendent of a county owned ski lift stated, "The thrust of the New York Times is that when interests and public discussion are particularly strong, . . . the Constitution limits the protections afforded by the law of defamation. Where a

position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in New York Times are present and the New York Times malice standards apply."

Justice Black specially concurring said in part, "The article here sued on as libelous discusses the use of the public's money to take care of the public's business by a paid agent of the public. . . ." Continuing, Justice Black said, "And the right to criticize a public agent engaged in public activities cannot safely, and should not, depend upon whether or not that agent is arbitrarily labelled a 'public official.' Nor should the right to criticize depend upon how high a position in government a public agent may occupy. Indeed a large percentage of public moneys expended is distributed by local agents handling local funds as the respondent in this case did."

█ We conclude from the tenor of these cases and many others covering the same subject matter that one is a public official if he, the alleged defamed, is carrying out a function of government or is participating in acts relating to matters in which the government has a substantial interest.

The alleged libelous publications by the defendant appear to us as criticisms directed not only against the plaintiff but also certain departments of the State of Illinois.

The plaintiff was engaged in operating a nursing home for the care of the ill, infirm, and subnormal and mentally retarded children, some at least of which were placed in plaintiff's nursing home as wards of the State of Illinois through authorized agencies of the State of Illinois. A fee was paid plaintiff by the State of Illinois for this care.

These wards of the State were placed in plaintiff's establishment until such time as a vacancy occurred in State owned and operated institutions for the care of subnormal and mentally retarded children.

Plaintiff's institution was licensed by the Department of Public Health of the State of Illinois, funds were authorized for the children's care by the Department of Mental Health of the State of Illinois, and children were placed in the institution by the Department of Children and Family Services of the State of Illinois.

Children found to be subnormal and mentally retarded become wards of the State and the Director of Children and Family Services is vested with the care and training of those wards who then has the right to place the actual physical care and training in State institutions or licensed institutions other than those operated by the State such as the Doctors Convalescent Center, if space is not available in a State institution. In so doing the Director is delegating his responsibility for the care and training of the ward. (C 23, §§ 5001–5041, Ill Rev Stats.)

There are few functions of the State of Illinois in which the public has greater interest and concern that institutionalization of unfortunately subnormal and mentally retarded children.

While it is true that all of the patients in plaintiff's institution were not wards of the State of Illinois, yet we further believe that the public interest is equally as great in all persons young or old so afflicted.

■  We are compelled to place plaintiff's institution in the category of that of a public official.

Concluding as we have we now turn to the sufficiency of the allegations of the complaint.

■  The complaint alleges a conspiracy and confederation to cause to be printed, published and circulated statements pertaining to the operation of plaintiff's nursing home and the care of its patients, libelous matters

277

that were false, malicious and designed to harm the plaintiff in its business.

Under the rule laid down in New York Times and other cases previously cited in this opinion the complaint is insufficient in that it fails to allege sufficient facts showing actual malice, that is with knowledge it was false or with such a reckless disregard of whether it was false or not. Such allegations are necessary. Suchomel v. Suburban Life Newspapers, Inc., 40 Ill2d 32, 240 NE2d 1, wherein it was said, "The omitted ingredient of a factual allegation of knowing or reckless disregard of falsity is not supplied by the repetition of adverbs and adjectives."

To like effect, Arlington Heights Nat. Bank v. Arlington Heights Federal Savings & Loan Ass'n, 37 Ill2d 546, 229 NE2d 514; Turley v. W.T.A.X., Inc., 94 Ill App2d 377, 236 NE2d 778.

Compatible with this rule of pleadings is Coursey v. Greater Niles Tp. Pub. Corp., 40 Ill2d 257, 239 NE2d 837, cited by plaintiff. In that case the court affirmed the sufficiency of the allegations of "actual malice" by saying, "The amended complaint did considerably more than repeat the epithet of 'actual malice.' As previously noted, it charged that 'the defendants, and each of them, intending to injure the plaintiff's good name and to injure him in his livelihood, with knowledge that it was *false and with a reckless disregard to whether it was false or not*. . . .' "

In the instant case proof of malice, as alleged, would not support a judgment for the plaintiff.

■ Pleadings are construed most strongly against the pleader. (Zanbetiz v. Trans World Air Lines, Inc., 72 Ill App2d 192, 219 NE2d 98.)

Neither do we find from the publication itself any matter that would supply or infer that the alleged libelous publications were activated by actual malice, that

278

is, with knowledge that it was false or such a reckless disregard of whether it was false or not.

Suggestion has been made that the allegation of a conspiracy changes the complexion of the necessity of an allegation of actual malice. With this we do not agree.

■ A civil action will not lie for mere conspiracy since it is the damage done in pursuance of a conspiracy which gives the right of action. (Kovar v. Bremer, 294 Ill App 225, 13 NE2d 656.)

■ The requirement of actual malice applies to individuals as well as to the news media. (Arlington Heights Nat. Bank v. Arlington Heights Federal Savings & Loan Ass'n, 37 Ill2d 546, 229 NE2d 514.) In this case the complaint was dismissed on motion.

■ While we entertain some doubt as to the sufficiency of the charge of conspiracy it would not be necessary to pass upon that question. We conclude that assuming a conspiracy has been properly alleged the motives of the conspiracy must be based upon actual malice, that is to say, that they were published knowing the facts to be untrue or with such a reckless disregard of whether the facts were true or not.

We conclude that the trial court was correct in dismissing the suit for want of a sufficient complaint.

In view of the foregoing we deem it unnecessary to discuss the other matters presented in the case.

The Circuit Court of St. Clair County is affirmed.

Affirmed.

EBERSPACHER, J., concurs.

MORAN, J., dissenting:

I agree that the plaintiff corporation, Doctors Convalescent Center, should be classified as a public official under the doctrine set forth in New York Times v. Sullivan, 376 US 254, 11 L Ed2d 686.

279

However, I believe that we should reverse and remand this case for trial because the complaint can be construed to state a cause of action on the theory that the articles were published with actual malice. Plaintiff's allegations of a conspiracy to publish libelous matters that were false, malicious and designed to harm the plaintiff in its business, presuppose willful deliberation and are therefore sufficient to state a cause of action. In Dyer v. Davis (La App), 189 So2d 678, 681 (1966), Writ refused 250 La 533, 197 So2d 679, the court said:

> "We note that in Article 9 of his petition, plaintiff alleges a conspiracy between defendants in the publication of the allegedly offensive editorial and in Article 10 avers as a fact that the defamatory nature of the comment was known to defendants. In paragraphs 14 and 16 it is avowed in substance that the alleged conspiracy was deliberate, willful, false, and malicious. For the purposes of disposing of the exception of no cause of action, it suffices to state the allegations noted bring the case within the rule of the New York Times decisions, supra, which in effect hold that as regards public officials, to be actionable a libel must be with 'actual malice,' which means it must be knowingly false or made with reckless disregard of whether it was false or not. The essence of the verbiage chosen by plaintiff to state his case is what determines whether he has in fact stated a cause of action. The language employed in the case at bar in substance charges actual malice in that it alleges a deliberate and willfully false statement, the equivalent of knowingly false. We hold, therefore, the petition states a cause of action in law."

The Supreme Court of the United States in New York Times did not prescribe any federal constitutional rules as to how to plead actual malice, but merely laid down

the theory that for a public official to establish actual malice a libelous article must be shown to have been published with knowledge or with a reckless disregard of whether or not the article was false. I would therefore hold that the allegation of conspiracy along with the allegations that the statements were false and malicious do not negate the necessity of an allegation of actual malice but rather that they constitute an allegation of actual malice.

Plaintiff also specifically alleges that:

"To the extent that the assertions set out in Paragraph 5 were not technically false, they were made without necessary qualification and in such distorted form as to give a false impression wholly unfair to the plaintiff. The entire series of articles published by the defendant as herein alleged was, and was meant by the defendant to be, a single connected attack upon the plaintiff, and the intermixture of non-accusatory assertions was designed to create an atmosphere of authenticity further to hurt and damage the plaintiff."

I believe this language describing the reporting being complained of takes this case out of the decision in Suchomel v. Suburban Life Newspapers, Inc., 40 Ill2d 32, 240 NE2d 1, wherein the court decided that actual malice was not apparent on the face of the libelous article because it appeared to be a straightforward report of both sides of a public controversy. The allegation in the present case in substance charges the defendant with intentional false reporting. Then too, in Suchomel the complaint was dismissed on motion for a summary judgment, whereas the complaint in the present case was dismissed on motion directed toward the complaint itself.

The above language quoted from the complaint protesting the manner of reporting brings this case within the

ambit of the decision announced in Coursey v. Greater Niles Pub. Corp., 40 Ill2d 257, 239 NE2d 837. The court there stated that the complaint incorporated by reference the article in question which on its face gave rise to factual inferences tending to support the charge of actual malice.

The complaint here alleges that there were printed and published of and concerning the plaintiff, a corporation engaged in the business of operating a nursing home for the care of mentally retarded children, false assertions that it had permitted children under its care to be kept under conditions which were "indescribable" and "unbelievable," to be beaten, to be given injections by untrained personnel, to have their bodies "covered" with their own excrement, to play with excrement and vomitus, to be kept under conditions "terrifying to them," to be "filthy" and to stand in "desperate need" of bathing and cleansing, to go about in ragged clothing, without shoes, socks or underwear, to bite and beat each other, to suffer a coma while dehydrated, with an infected throat and bruises, to be "miserable" and "neglected," to exist under conditions which called for a thorough investigation, to remain in temperature in the 40s, naked except for diapers, to suffer from malnutrition, and from uncleanliness to the extent of open sores on the body and scales on the scalp, and to suffer from various diseases evidencing neglect. The content of the articles in the instant case could also give rise to factual inferences tending to support the charge of actual malice.

For the purposes of considering the motion in this case, we must assume that all of the allegations are true and that therefore the articles complained of were the result of a conspiracy by the defendants to injure the plaintiff's business by the malicious publication of false statements. These are factual allegations from which actual malice may reasonably be said to exist. I see no purpose in searching for the magic words

". . . with knowledge it was false or with such a reckless disregard of whether it was false or not," in order to find an allegation of actual malice. New York Times does not so require. The design and willful deliberation which are part of a conspiracy along with the charge of intentional false reporting indicate the presence of knowledge or reckless disregard of it. The only way plaintiff can recover is to prove the designing and planning of the conspiracy which presupposes actual knowledge and to prove that the "intermixture of nonaccusatory assertions was designed to create an atmosphere of authenticity further to hurt and damage the plaintiff." This latter charge complains of the result of the conspiracy and on its face requires the plaintiff to prove knowledge. A design or conspiracy to create such an atmosphere could only be based on the knowledge that the statements were false. If they were true, there would be no need to conspire to create this atmosphere for the truth itself would be sufficient to achieve the aims of defendant.

When all the allegations are admitted to be true, as must be done, I see no conclusion except that the complaint is sufficient to state a cause of action. Ordinarily, where specific facts are set out in a pleading, the pleader need not state the legal conclusions to be drawn from such facts. In other words, it is sufficient if the pleader states the facts and leaves the court to find the law. (71 CJS 38, Pleading, § 15.) This doctrine is the backbone of our Civil Practice Act which calls for liberal construction of pleadings. "Pleadings shall be liberally construed with a view to doing substantial justice between the parties." (Ill Rev Stats, c 110, § 33 (3).) "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill Rev Stats, c 110, § 42 (2).) Liberal construction of pleadings has been the policy of this court. Olin Mathieson Chemical Corp. v. J. J. Wuellner & Sons, Inc.,

283

72 Ill App2d 488, 218 NE2d 823. The statement by the majority, "(p)leadings are construed most strongly against the pleader," conflicts with the letter and spirit of the Civil Practice Act and with what we had to say in Olin Mathieson Chemical Corp. v. J. J. Wuellner & Sons, supra, and Fanning v. Lemay, 78 Ill App2d 166, 222 NE 2d 815.

Plaintiff's complaint sets out in full the newspaper accounts which were the subject matter of this suit. In addition, it specifically alleges that these articles were the result of a conspiracy, were false and reported in a distorted form, and were maliciously designed to harm the plaintiff in its business. When these allegations are admitted as true and construed as a whole, as they must be, the conclusion is inescapable that actual malice is present. At the very minimum, a charge of conspiracy which presupposes a willful deliberation along with a charge that the articles were false establishes a reckless disregard of whether or not the articles were false. To take the time necessary to consider and deliberate and then still publish false articles appears to me to be squarely within the actual malice requirement of New York Times. I therefore dissent.

I would reverse the judgment of the trial court and remand this case for trial.