THE PEOPLE *ex rel.* CAROLINE TRAITEUR *et al.,* Plaintiffs-Appellees, *v.* LEONARD ABBOTT *et al.,* Defendants-Appellants.

(No. 74-143;

Fifth District—March 27, 1975.

Roger M. Scrivner, of Listeman, Bandy, & Hamilton Associates, of Belleville, for appellants.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is an appeal by the defendants, Leonard Abbott and Beverly Abbott, from an order for a permanent injunction enjoining them from operating a dog kennel at their residence.

In August 1973 the plaintiffs filed a complaint for injunctive relief alleging that a foul and sickening odor and the sound of dogs howling and barking permeates the air, that the odor and the noise prevents the

plaintiffs and other people in the community from enjoying the reasonable use of their homes and yards, that the plaintiffs will suffer irreparable injury unless injunctive relief is granted and that the defendants' conduct constitutes a public nuisance as defined by statute (Ill. Rev. Stat. 1973, ch. 100½, par. 26(8)). Subsection (8) provides that it is a public nuisance:

> "To erect, continue or use any building or other place for the exercise of any trade, employment or manufacture, which, by occasioning noxious exhalations, offensive smells or otherwise, is offensive or dangerous to the health of individuals, or of the public."

The court found that the operation of the dog kennel did constitute a nuisance both because of the noise and because of the odor which emanated from the kennel.

■■ Defendants maintain that the trial court erred in overruling the defendants' motion to dismiss because there was an adequate remedy at law. At the time the petition for injunction was set for hearing five criminal charges were pending against the same defendants for alleged violations of the above statute. Defendants argue that because these cases are pending and because there is a criminal statute affording a remedy to the plaintiffs, injunction should not have been granted. We do not agree.

Cases cited by the defendants do not support their view that injunction was not proper. In *City of Chicago v. Fritz*, 36 Ill.App.2d 457, 184 N.E.2d 713, the court held injunction proper to abate the operation of a dump within 1 mile of a municipality. The same statute was involved. In the course of its opinion the court remarked that it had long been recognized that a court of equity has jurisdiction when the enforcement of a criminal statute is incidental to the general relief sought. The court said: "Since the facts presented here justify equitable intervention, an injunction may issue even though the conduct objected to is also a crime * * *."

■■ In *Illinois Power Co. v. Latham*, 3 Ill.App.3d 1000, 279 N.E.2d 133, a case decided by this court, we reversed a trial court decree holding that injunction would not lie. The trial judge had said:

> "* * * [T]his Court cannot restrain criminal acts and is not constituted to enforce the criminal laws."

On appeal we said:

> "Although a court of equity is reluctant to issue an injunction to intervene in matters purely criminal, it will do so in a proper case. * * * * * * Where equity would otherwise have jurisdiction to enjoin certain conduct, the fact that the legislature

has made such conduct a crime does not affect the jurisdiction to enjoin. \* \* \* The remedy at law \* \* \* is not always efficacious and adequate \* \* \*.' " 3 Ill.App.3d 1000, 1001-1002.

In *People v. Hart*, 154 Ill.App. 237, a case also cited by the defendants, injunctive relief was sought against Hart and 87 other defendants to enjoin their obstructing the streets in front of the courthouse in Peoria, Illinois, with their hacks, cabs, drays and wagons. It was alleged that this was in violation of section 221 of the Criminal Code as it existed in 1910. In *Hart* the court simply did not find facts supporting an injunction. It said:

"This allegation [of the plaintiffs] is simply the allegation of a conclusion, and does not allege any facts which show any inconvenience or detriment either to the public or to the owners of adjacent property.

There is neither any allegation as to the width of the streets or that there is not ample room and space remaining for any person desiring to use said street; \* \* \*." (154 Ill.App. 237, 239-240.)

Clearly the facts differ from those in the instant case where there was ample evidence that plaintiffs received the injuries about which they complained.

The principle that injunctive relief is available in a case like that before us is illustrated by the language of the court in *People v. Huls*, 355 Ill. 412, 417, 189 N.E. 346, where the court said:

"The court has never regarded a criminal prosecution which cannot prevent the continuance of a nuisance as a complete and adequate remedy for a wrong inflicted on the people."

Betty Jones testified that she lives on a lot just behind the lot occupied by the defendants. She stated that the defendants keep Malamutes and other types of dogs in the kennel and that as many as 37 dogs were in the kennel at one time. Mrs. Jones alleged that the smell emanating from the kennel is very bad, that it is nauseous at times, that it is present at all times and that her family cannot use their yard for picnics or other activities because of the smell. Mrs. Jones also testified that the defendants' dogs make a loud screaming noise, that the dogs howl at all times of the day and that she remembered one occasion during which the howling went on all night. James Moon lives four houses away from the defendants and has smelled odors and heard noises emanating from the defendants' kennel. Moon stated that the odors are very powerful and uncomfortable. He also stated that the dogs make a very unusual howling sound, that he has heard the howling from the defendants' dogs for 2 or 3 years and that he has been awakened by the barking and

howling of the dogs in the early morning hours on more than one occasion. Patricia Neff is the daughter of Betty Jones and lives in a mobile home on Mrs. Jones' lot. She testified that the smell from the defendants' kennel is very repulsive and that the odor almost makes her sick when she goes into her yard. She further testified that the smell is present at all times and that her children don't play in the yard because the smell is so bad. Mrs. Neff stated that loud barking, howling and screaming from the defendants' dogs is heard off and on every day and every night and that she is sometimes awakened from her sleep by the noise. Lavern Helm, the defendants' next-door neighbor, testified that offensive odors emanate from the kennel 24 hours a day and that he doesn't know whether he has ever smelled anything worse. He further testified that the defendants' dogs howl for as long as 1½ hours without stopping and that he has problems trying to sleep in the early morning hours because of the noise and odor coming from the kennel. Caroline Traiteur who lives directly across the street from the defendants testified that the defendants' dogs smell terribly, that the smell is constantly present and she cannot describe something that stinks so bad. She also stated that the defendants' dogs are constantly making a loud moaning noise.

Several witnesses testified on behalf of the defendants but only one of these witnesses is a close neighbor. Robert Jordan stated that he lives directly behind the defendants' property, that he has heard very little, if any, noise emanating from the defendants' property and that he does not think that he has ever smelled any odors coming from the dog kennel. Norma and Edward Altman are residents of Missouri and acquaintances of the defendants. They have visited the defendants on several occasions and have boarded dogs in the defendants' kennel. The Altmans testified that the defendants' dogs will occasionally bark but that the noise does not continue for very long. Edward Altman stated that he has smelled only very minor odors in the kennel area and that the defendants clean the kennel twice a day. Norma Altman stated that she has never noticed any obnoxious smells about the kennel area and that the defendants take care of their dogs and keep the kennel clean. Earnest West, the defendants' brother-in-law, testified that he has been to the defendants' kennel many times, that he has not smelled odors emanating from the kennel and that the defendants' dogs do not bark unless they are excited or aggravated. Virginia Bean stated that she lives about two blocks from the defendants and that she "guesses" that she has not smelled any obnoxious odors in the neighborhood. The defendants each testified that the kennels are cleaned at least twice a day, that obnoxious odors do not emanate from the kennels and that the dogs occasionally bark or howl but that the noise does not continue for a long period of time

because the dogs become quiet when they are told to do so. The defendants stated in their answers to written interrogatories that they owned 16 Alaskan Malamute dogs which were being kept in the kennel as of September 1973 and that other dogs are sometimes boarded at the kennel.

The defendants introduced evidence showing that there were several dogs which were allowed to run free in the neighborhood and that those dogs sometimes made noise. There was also some evidence tending to show that certain nearby manufacturing establishments emitted odors which permeated the atmosphere in the neighborhood. The plaintiffs' witnesses, however, were positive in their testimony that the odor and noise complained of did emanate from the defendants' kennel.

■■ Offensive odors constitute a nuisance for which there is a cause of action. (*Oehler v. Levy,* 234 Ill. 595, 85 N.E. 271.) An excessive amount of noise may also constitute a nuisance. (*Dube v. City of Chicago,* 7 Ill.2d 313, 131 N.E.2d 9.) The testimony in the case at bar was sharply conflicting, and we leave it to the trier of fact to determine the credibility of each witness. When the evidence in a cause tried by the court without jury is conflicting, a reviewing court will not disturb the findings of the court unless they are manifestly against the weight of the evidence. (*Geist v. Lehmann,* 19 Ill.App.3d 557, 312 N.E.2d 42.) We find that there was sufficient evidence in the instant case from which the court could have found that a foul odor emanates from the defendants' kennel, that an excessive amount of noise emanates from the kennel and that the odor and noise unreasonably hinder some of the defendants' neighbors in their attempts to make use of their homes and yards. Since the neighborhood involved is a residential district, the complaining witnesses lived in their homes before the defendants constructed the dog kennel and the defendants' business of raising dogs is not of great importance to the community, we find that the trial court did not err in finding that the maintenance of the kennel did constitute a nuisance.

Defendants maintain that the trial court's order was too broad and drastic in the light of the evidence. They point to the fact that the zoning code of St. Clair County permits owners to keep up to three dogs in their place of residence. We find nothing in the order of the court which would prevent defendants from keeping up to three dogs at their residence. The order states that the nuisance is to be abated and the noise and smells from dogs are not to be allowed, that facilities for maintaining the kennel shall be dismantled—in other words, that the factors contributing to the creation of the nuisance shall be eliminated.

■ ■■ The restraint imposed by an injunction should not be more extensive than is reasonably required to protect the interests of the party

in whose favor it is granted, and should not be so broad as to prevent defendant from exercising his rights. (21 I.L.P. *Injunctions* § 180 (1956).) The terms of an injunction should be as definite, clear and precise as possible in order that there may be no excuse or reason for misunderstanding or disobeying it. (*Illinois Power Company v. Latham.*) A proper injunction order must couch its directions or prohibitions "in terms so definite, clear and precise as to demand obedience or to be capable of enforcement or execution." *Illinois Power Company v. Latham; Illinois School Bus Co. v. South Suburban Safeway Lines, Inc.,* 132 Ill.App.2d 833, 270 N.E.2d 200.

Defendants cite without discussion *City of Kankakee v. New York Central R.R. Co.,* 387 Ill. 109, 55 N.E.2d 87. Here the court held that an ordinance of the City of Kankakee was unreasonable and arbitrary. The ordinance required that all persons maintaining smokestacks prevent such smokestacks from emitting smoke for an aggregate period of more than 6 minutes in the hour. The culprit in the case was the New York Central Railroad's roundhouse smokestack. The time was World War II, railroads were essential to the war effort, and their facilities were overtaxed. Furthermore, the city ordinance left it to the discretion of the city building inspector whether or not injunctive or other relief would be sought. The court held that this was an undue delegation of authority. For the reasons indicated we find no parallel between *City of Kankakee* and the instant case.

The injunction ordered by the trial court is not over broad nor, under the evidence, is it too drastic. We accordingly affirm.

Affirmed.

EBERSPACHER and CARTER, JJ., concur.