LEON STREIF *et al.*, Plaintiffs-Appellees, *v.* EUGENE BOVINETTE, Defendant-Appellant.

Fifth District    No. 79-179

Opinion filed October 2, 1980.

SPOMER, J., concurring in part and dissenting in part.

David J. Letvin, of Cohn, Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, and David Goldberger, of The Roger Baldwin Foundation of the American Civil Liberties Union, of Chicago, for appellant.

Mark H. Kruger, of St. Louis, Missouri (M. Deborah Benoit, of counsel), for appellees.

Mr. JUSTICE HARRISON delivered the opinion of the court:

The defendant, Eugene Bovinette, brings this interlocutory appeal following an order entered February 23, 1979, in the circuit court of St. Clair County, enjoining him from certain activities which the court found

to be improperly interfering with the business operations of the plaintiffs, Leon Streif and Vandalia Bus Lines, Inc. Bovinette challenges the preliminary injunction arguing that the circuit court's order (1) violates the terms of section 3—1 of "An Act to revise the law in relation to injunctions" (Ill. Rev. Stat. 1977, ch. 69, par. 3—1), respecting the specificity of language required to be contained in writs of injunction; (2) that the order is in contravention of the defendant's constitutional right to freedom of speech and his right to petition government for a redress of grievances as stipulated and protected by the first and fourteenth amendments of the United States Constitution, as well as in article I, section 5, of the Constitution of the State of Illinois; (3) that the scope of the order is both unconstitutionally vague and overbroad; and (4) that the evidence presented in the trial court fails to support the issuance of a preliminary injunction. We reverse the order of the circuit court.

The plaintiff's complaint alleges that defendant engaged in various actions which constitute a nuisance and that they have unjustifiably interfered with his commercial operations as president of Vandalia Bus Lines, Inc., located at Caseyville, Illinois. Vandalia Bus Lines, Inc., is a private corporation licensed by the Interstate Commerce Commission and the various State authorities to conduct nation-wide business as a passenger carrier and charterer of vehicles. Bovinette's home is situated in a commercially zoned district lying adjacent to property acquired by Streif in the summer of 1975. The plaintiff has used the land concerned, located at 312 West Morris, for the operation of his bus company and as a family residence since that time. Streif alleges that over a three-year period defendant engaged in a pattern of continuing harassment designed to damage the plaintiff's business interests. Included among the actions charged were allegedly unwarranted and ill-founded letters of complaint, accusing the corporation of violations of various State and Federal statutes and regulations, sent to the Illinois Department of Transportation, the Office of the Secretary of State of Illinois, the Illinois Environmental Protection Agency, the Illinois State Police, and the United States Department of Transportation. In substance they alleged road safety violations concerning the condition of buses, improprieties in inspection and licensing of the buses, lack of conformity with air, water and noise pollution standards, and alleged abuses of licensing privileges available to plaintiff as a vehicle dealership. On at least 15 different occasions during the period involved, the parties contacted the Caseyville Police Department and the State Police Department concerning verbal confrontations and other disturbances between the neighbors. These included a report that the defendant allegedly shot Streif's dog and on another occasion threatened one of his employees with a shotgun. These accusations were denied or explained by the defendant in testimony.

Plaintiff introduced exhibits consisting of copies of various correspondence between Bovinette and the State and Federal agencies he had contacted in 1978 and 1979. The tenor of these letters can only be characterized as officious, meddlesome and contentious. Streif testified that in their wake a regular stream of investigators and inspectors descended upon his business, causing an inordinate loss of man hours in addition to costs and inconveniences which otherwise would not have occurred. He indicated that the defendant had used binoculars to survey the bus yard operations searching for possible sources on which to base complaints and that virtually every allegation made to the agencies involved was without merit and wholly malicious. Bovinette countered that the complaints he had made were well-founded and worthy of official attention and that certain of them were still in the process of being investigated and would be confirmed.

The circuit court found that the majority of the complaints were without merit and that the actions in which defendant had engaged constituted a nuisance for the purpose of disrupting Streif's and Vandalia Bus Lines' business operations by means of direct and indirect coercion. It deemed these actions an interference with the plaintiff's property rights, which it characterized as purposed in harassment intended to cause economic ruination and that the communications made to governmental agencies under the facts could not be fairly construed as a constitutionally protectible exercise of the freedom of speech. The trial judge held that this abusive exercise of speech and the right to petition intended to harass the plaintiffs "under the cloak of publicizing the purported truth of police, safety or environmental violations" was violative of the public policy of the State of Illinois. In addition, the court determined that no adequate remedy at law was available because of the economic and other practical impediments to filing repeated actions against defendant in light of the repetitive nature of his activities. In accordance with these findings a preliminary injunction was granted and on March 22, 1979, pursuant to Illinois Supreme Court Rule 307(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 307(a)(1)), appellant filed notice of interlocutory appeal requesting that this court reverse the decision of the circuit court.

What we believe to be the unique facts of the present cause confront this court with the problems of adjusting important competing interests, interests which call into conflict the exercise of rights with which every citizen is endowed. We consider the accommodation of these interests to be a matter of the utmost gravity, especially today when so much is heard in the body politic of the restraints and exactions of administrative regulation on commercial enterprise. No doubt, as plaintiffs' testimony indicated, the full weight of an inquiring bureaucracy may unintentionally cause considerable cost, dislocation and plain interference in the conduct

of daily business. Where such inquiry is set in motion through vindictiveness or irresponsibility, we concur in recognizing the serious and reprehensible injury that may result.

■■ The plaintiffs are entitled to be free from improper and unjustified interference with their right to conduct a lawful business (see, *e.g., Doremus v. Hennessy* (1898), 176 Ill. 608, 614-15, 52 N.E. 924), which is a property right that equity may clearly intervene to protect. (*O'Brien v. Matual* (1957), 14 Ill. App. 2d 173, 192, 144 N.E.2d 446; but see *Montgomery Ward & Co. v. United Retail Employees* (1948), 400 Ill. 38, 79 N.E.2d 46.) Seen in one perspective, the facts before us may be analogized to those cases dealing with tortious commercial disparagement, also known as injurious falsehood, in which the plaintiff alleges that the party charged has intentionally and falsely disparaged his business, or the products of his business. (*Aerosonic Corp. v. Trodyne Corp.* (5th Cir. 1968), 402 F.2d 223, 231; *Crinkley v. Dow Jones & Co.* (1978), 67 Ill. App. 3d 869, 876-77, 385 N.E.2d 714; see generally Prosser, Torts §128, at 915 ff. (4th ed. 1971); Smith, *Disparagement of Property*, 13 Colum. L. Rev. 13, 132-40 (1913); Note, *The Law of Unfair Competition in Illinois*, 1950 U. Ill. L. Forum 675, 690.) In the proper circumstances equity has recognized the need to enjoin unfair competitive practices which employ disparagement. (*Black & Yates, Inc. v. Mahogany Ass'n, Inc.* (3d Cir. 1941), 129 F.2d 227; Prosser, Torts §128, at 917; see also Note, *The Law of Commercial Disparagement: Business Defamation's Impotent Ally*, 63 Yale L.J. 65, 96-103 (1953).) But unlike the cases and commentary cited above, the present cause is complicated by the fact that the alleged disparagement has been communicated to government rather than the public at large, nor is the defendant a competitor in a purely commercial context.

■■ Opposing plaintiffs' commercial interest are those rights of expression which the defendant claims have been abridged by the court's order. Among these are the first amendment's guarantee of freedom of speech and its protection of the right of citizens to petition the government for a redress of grievances. It is especially the latter right which is called into question here, for the injunction's only particularized reference to offensive conduct is to future "spurious complaints" to government agencies. The concept of petition in Anglo-American jurisprudence, dating back to Magna Carta (1215), has slowly expanded through the centuries. "It is no longer confined to demands for 'a redress of grievances,' in any accurate meaning of these words, but comprehends demands for an exercise by the Government of *its* powers in furtherance of the interest and prosperity of the petitioners, and of their views on politically contentious matters." (The Constitution of the United States of America: Analysis and Interpretation 915 (6th ed. 1964).) While the petitioning process, historically, has been of a public political nature (at various times involving the legislative

machinery between king and parliament and, in the 17th and 18th centuries, a way of addressing and defining constitutional relationships and of protesting fundamental constitutional infringements) it has been, since the time of Blackstone, the right of every citizen. (G. Wills, Inventing America: Jefferson's Declaration of Independence 54-64 (1978).) We believe that the right of a citizen to lodge complaints with appropriate governmental agencies must be considered as naturally flowing from this historical concept. A citizen's right to communicate and to address his government in matters which he deems to be important cannot be lightly subjected to restraint. (See, *e.g.*, *Brown v. Glines* (1980), 444 U.S. 348, 366, 62 L. Ed. 2d 540, 553, 100 S. Ct. 594, 612 (Brennan, J., dissenting) (challenge to validity of Air Force Regulations requiring approval of commander before servicemen may circulate petitions on base); *Edwards v. South Carolina* (1963), 372 U.S. 229, 235, 9 L. Ed. 2d 697, 702, 83 S. Ct. 680 (civil rights demonstration on the grounds of the South Carolina State House); *Bridges v. State of California* (1941), 314 U.S. 252, 86 L. Ed. 192, 62 S. Ct. 190, 201 (telegram to Secretary of Labor concerning pending labor litigation in Los Angeles County Superior Court); *In re Quarles* (1895), 158 U.S. 532, 535, 39 L. Ed. 1080, 15 S. Ct. 959 (right of private citizen to inform Federal official of violation of internal revenue laws); *Stern v. United States Gypsum, Inc.* (7th Cir. 1977), 547 F.2d 1329, 1342 *cert. denied* (1977), 434 U.S. 975, 54 L. Ed. 2d 467, 98 S. Ct. 533 (suit by Internal Revenue agent against audited corporation concerning complaints by defendant to the Internal Revenue Service dealing with agent's performance of audit); *Adams v. Carlson* (E.D. Ill. 1973), 352 F. Supp. 882, 896, *rev'd in parts not here relevant* (7th Cir. 1973), 488 F.2d 619 (censorship of outgoing prison mail); accord, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961), 365 U.S. 127, 138, 5 L. Ed. 2d 464, 471, 81 S. Ct. 523 (Sherman Act suit against railroad companies' congressional lobbying efforts aimed at adoption and retention of laws destructive of trucking business).) We make no finding as to the validity of the first amendment issues which counsel for both parties have raised, ably researched and argued. It has been our purpose here only to note that in considering the various arguments advanced, we have taken special cognizance of the important rights concerned.

Because of our decision regarding the issue of the particularity of the language used by the court below in issuing a preliminary injunction against the defendant, we find it unnecessary to decide other questions which the parties have presented.

In respect to its decision to either grant or refuse to grant a preliminary injunction, the trial court is vested with a large measure of discretion; absent a demonstrated abuse of that discretion its determination will not be overruled. (*Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d

498, 502, 392 N.E.2d 1148; *Shappert v. Roettger* (1976), 36 Ill. App. 3d 452, 456, 343 N.E.2d 695.) The issuance of such an injunction is a remedy of an extraordinary nature, which of necessity must be granted with the utmost care. One of its principal objectives is to preserve the status quo between the parties, defined as the last, actual, peaceable and uncontested status preceding the instant controversy. (*Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 398, 372 N.E.2d 125.) As a remedy it is merely provisional in character, concluding no rights, which must await determination in a final hearing on the merits. Hence, it is improper if its tendency is to change the status quo of the litigants rather than preserve it. *Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 481, 368 N.E.2d 990; *P.S.L. Realty Co. v. Granite Investment Co.* (1976), 42 Ill. App. 3d 697, 699, 356 N.E.2d 605.

■■ The order which the circuit court entered on February 23, 1979, states that:

> "IT IS THEREFORE ORDERED, ADJUDGED AND DE-CREED that
> 1. Plaintiff is given leave to file his amended complaint.
> 2. A preliminary injunction is hereby ordered to issue enjoining defendant from annoying or harrassing [*sic*] the plaintiff in any manner as described in plaintiff's complaint and from interfering in any way with plaintiff's use and enjoyment of his property rights and his business operations; defendant is specifically enjoined from making spurious complaints to governmental agencies concerning plaintiff's business activities."

Appellees concede, and we hold, that the portion of the first clause of the order which enjoins the defendant from "annoying or harassing the plaintiff in any manner as described in plaintiff's complaint * * *'" must be stricken since under both case law and the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 3—1) the language used is improperly broad and imprecise. The statute clearly provides that:

> "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; *shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained*; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." (Emphasis added.)

These statutory provisions are not mere technicalities which we may waive where the circumstances may indicate the equity of some other result. *Bettendorf-Stanford Bakery Equipment Co. v. UAW Local No.*

*1906* (1977), 49 Ill. App. 3d 20, 23, 363 N.E.2d 867; *G. H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1, 6, 305 N.E.2d 317.

In *Illinois Power Co. v. Latham* (1973), 15 Ill. App. 3d 156, 164, 303 N.E.2d 448, this court held, in ruling upon the validity of an injunction articulated in far greater detail than the one presently under review, the use of the words "harassing" and "annoying" lacked sufficient particularity to inform the defendants of what they were to be restrained from doing. There is an abiding certainty in both statutory and case law that an injunction should be as definite, clear and precise in its terms as is possible so that there may be no excuse or reason for failing to comprehend or obey its prohibitions. The act enjoined or directions given must be delineated with the particularity requisite to command obedience, enable enforcement, and allow an understanding of exactly what is forbidden. (*Illinois Power Co. v. Latham* (1973), 15 Ill. App. 3d 156, 163; *Illinois School Bus Co. v. South Suburban Safeway Lines, Inc.* (1971), 132 Ill. App. 2d 833, 840, 270 N.E.2d 200; *Hoffmann v. Hoffmann* (1965), 59 Ill. App. 2d 459, 462, 208 N.E.2d 579.) And certainly, where rights of the nature here concerned may be subject to curtailment, "[t]he restraint imposed by an injunction should not be more extensive than is reasonably required to protect the interests of the party in whose favor it is granted, and should not be so broad as to prevent defendant from exercising his rights." *People ex rel. Traiteur v. Abbott* (1975), 27 Ill. App. 3d 277, 282-83, 327 N.E.2d 130.

Accordingly, we find it necessary to strike the remaining portions of the present injunction as well. They state that the defendant may not interfere in any way with the plaintiffs' use and enjoyment of their property rights and business operations. These prohibitions are couched in the most general and expansive terms possible, without defining or particularizing the rights to be preserved or the mode in which they are to be prevented from being infringed. The language "interfering in any way" may comprehend many actions which the defendant could engage in without transgressing the bounds of legitimate behavior.

The final provision of the order enjoins the making of "spurious complaints" to "governmental agencies" without clarifying the nature of the complaint with sufficient precision or identifying which agencies are covered. It is the steadfast position of the appellant that none of his complaints was faultily based. While we are persuaded that our brother in the trial court correctly perceived the equities presented by the evidence, it would be improvident for us to allow to stand an order enjoining future acts in this vein, based as they are upon what is by definition merely a preliminary determination of fact. The effect of the broad language used may indeed dissuade even intermeddling actions which are nonetheless properly grounded in fact and deserving of administrative attention.

Therefore, because of the lack of specificity in its terms, we are obliged to dissolve the preliminary injunction.

Reversed.

KASSERMAN, J., concurs.

Mme JUSTICE SPOMER, concurring in part and dissenting in part:

The majority dissolved the preliminary injunction because it lacked specificity in its terms, and therefore found it unnecessary to reach the constitutional question of whether defendant's conduct was within the protection of the First Amendment and not subject to injunctive control. I concur that the portion of the order which enjoined defendant from "annoying or harrassing [sic] the plaintiff in any manner as described in plaintiff's complaint" must be stricken, since under both case law and the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 3—1) the language is imprecise and makes prohibited reference to the complaint in stating the acts restrained. However, I think the balance of the order ("interfering in any way with plaintiff's use and enjoyment of his property rights and his business operations; defendant is specifically enjoined from making spurious complaints to governmental agencies concerning plaintiff's business activities") is sufficiently precise to adequately inform defendant what conduct is forbidden. *Illinois Power Co. v. Latham* (1973), 15 Ill. App. 3d 156, 164, 303 N.E.2d 448, 455, where defendant was enjoined from "interfering with or hindering plaintiff's employees in the performance of their duties and injuring or attempting to injure or destroy plaintiff's property."

A spurious complaint, to answer defendant's query, is a false complaint, or one of a deceitful nature or quality. (Webster's New Collegiate Dictionary.) The complaint alleged and the evidence showed that defendant made numerous such complaints to various agencies; and to require the injunction order to identify the name of each agency, or fail for lack of specificity as defendant urges, would place a monumental and unnecessary burden on plaintiff, since literally hundreds of such groups exist for regulation of small businesses, including plaintiff's.

Although not deciding the constitutional issue, the majority discussed at some length the relative rights of the parties: plaintiff's right to be free from improper interference with their right to conduct a lawful business versus defendant's First Amendment guarantee of free speech and right to petition for redress of grievances. It concluded, "[A] citizen's right to communicate and to address his government in matters which he deems to be important  cannot be lightly subject to restraint." Under my view of this case, it becomes necessary to discuss the conditions under which

restraint should be applied. The right of a citizen to inform his representatives in government of his desires regarding passage and enforcement of laws is a preferred right entitled to rigorous judicial protection (*United Mine Workers v. Illinois State Bar Association* (1967), 389 U.S. 217, 19 L. Ed. 2d 426, 88 S. Ct. 353), and it does not legally depend upon his intent in doing so. (*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961), 365 U.S. 127, 139, 5 L. Ed. 2d 464, 81 S. Ct. 523.) This right, however, is not inherently absolute, but must be considered in the light of the rights of others. *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 550, 229 N.E.2d 514; *United Public Workers of America v. Mitchell* (1947), 330 U.S. 75, 91 L. Ed. 754, 67 S. Ct. 556; *Times Film Corp. v. Chicago* (1961), 365 U.S. 43, 5 L. Ed. 2d 403, 81 S. Ct. 391; *Baines v. City of Damville* (4th Cir. 1964), 337 F.2d 579.

The parties disagree as to what test should be applied in determining the type of conduct that is outside the ambit of the privilege, and consequently, actionable in a civil suit. The Illinois Supreme Court has said that to state a cause of action, plaintiff must show that defendant's wrongful conduct was motivated by actual malice. (*Arlington*, 37 Ill. 2d 546, 551; *Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill. 2d 112, 214 N.E.2d 746.) In *Noerr* a "sham" test was defined, limiting the privilege only where the defendant's acts were a mere sham to cover what is actually nothing more than his attempt to interfere directly with plaintiff's business relationships. (365 U.S. 127, 144, 5 L. Ed. 2d 464, 475, 81 S. Ct. 523, 533.) I find defendant's position clearly in error when he states that "no matter what the object of the one petitioning the government, holds *Noerr*, his right to so act is protected." In *Noerr*—described by the United States Supreme Court as a "no-holds-barred fight" between the trucking industry and its competitor, the railroads, both seeking control of a profitable source of income—the court clearly recognized the situation in which the right to petition the government is limited:

"There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified. But this certainly is not the case here. No one denies that the railroads were making a genuine effort to influence legislation and law enforcement practices. Indeed, if the version of the facts set forth in the truckers' complaint is fully credited, as it was by the courts below, that effort was not only genuine but also highly successful. Under these circumstances, we conclude that no attempt to interfere with

business relationships in a manner proscribed by the Sherman Act is involved in this case." *Noerr*, 365 U.S. 127, 144, 5 L. Ed. 2d 464, 475, 81 S. Ct. 523, 533.

In *Sierra Club v. Butz* (N.D. Cal. 1972), 349 F. Supp. 934, 937, this test was again recognized:

"Liability [for invasion of privacy and defamation] can be imposed only when what appears to be an attempt to discuss matters of public interest is a 'sham' in that the speaker knows his statements are false or speaks with reckless disregard of whether they are true or false. Importantly, the Court recently made it absolutely clear that absent this 'sham' use common law 'malice' is irrelevant to a person's right to speak freely without fear of liability. [Citation.]"

Regardless of the test used, ill will alone cannot be equated to actual malice. As the court in *Arlington* stated:

" * * * there must be a desire to harm, which is independent of and unrelated to a desire to protect the acting party's rights and which is not reasonably related to the defense of a recognized property or social interest." *Arlington*, 37 Ill. 2d 546, 551.

The complaint in the case at bar alleged that defendant's acts were done maliciously, were untrue, and were known to be untrue. Plaintiff's testimony supported the allegations. When plaintiff first commenced business, he called upon all his neighbors, including defendant, and introduced himself. He told defendant that he was informed that problems had arisen between defendant and the previous owner, and he wanted to work out any problems that might arise between them. Defendant told him that the only way he could get rid of the problem was to buy defendant's property at an escalated price, and failing this, plaintiff would continue to have trouble. Thereafter, plaintiff testified that the Department of Transportation "has literally lived with me since October; the man is here almost daily because he gets another phone call from defendant." Defendant made complaints that the buses were defective and improperly inspected, although plaintiff did not inspect his own buses, and in fact, proper inspections had been made. As a result of defendant's complaints, the agency involved caused a reinspection of plaintiff's fleet of 107 buses, which took place over more than a month and necessitated the loss of 1,000 man-hours of his employees' time, since an employee had to accompany the inspector at all times. Three State agents were present at plaintiff's business for three weeks on a daily basis. No citations were issued as a result of defendant's complaints.

Defendant complained to the Caseyville Police that plaintiff was operating buses without safety stickers, and 20 tickets were issued, requiring plaintiff's appearance at the police station to exhibit proof of purchase

of the wheel stickers. This action consumed approximately two days of plaintiff's time, and the charges were dismissed.

Defendant complained to the United States Department of Transportation concerning the condition of the buses, and as a result three of its employees made an inspection of the buses. Plaintiff had all current safety stickers on the buses, and no citations were issued.

Defendant complained to the Environmental Protection Agency about noise pollution. Plaintiff then contacted the other residents of the area to ascertain whether such pollution existed, and he found no verification of defendant's complaint. In fact, these residents wrote letters and a petition to the EPA asserting that no noise pollution existed in the area. Plaintiff testified that the business is located in a commercial, not a residential, area. As a result of this complaint, and several phone calls from defendant, the agency sent an inspector to plaintiff's business, and he took the buses off the job for tests. No citations had been issued as of the date of the hearing.

As a result of defendant's complaint to the Secretary of State, five investigations were made. Of these, only one was found valid, *i.e.*, that in moving from Lebanon to Caseyville plaintiff had failed to change the address at which his records were kept. The change was made, and no citations were issued.

Defendant also complained that plaintiff was improperly using dealer plates. This, too, was dismissed, although it occasioned plaintiff two weeks' loss of time, including a trip to Springfield.

On another occasion, an injured dog crawled up on plaintiff's property and died under plaintiff's window. Plaintiff asked an employee to move the dog because of the foul smell and unsanitary condition. When he attempted to do so, defendant threatened the employee with a gun, claiming he was trespassing on defendant's property. Other evidence disclosed defendant's use of binoculars to observe both plaintiff's place of business and his children. Defendant claimed plaintiff's sons called him names, and had them arrested. These charges were also dismissed.

The court found that defendant's acts grossly exceeded civic responsibility and that his communications, which could not be construed as dissemination for public enlightenment, were made for the purpose of disrupting plaintiffs' business by direct and indirect coercion.

This is not a case involving two competitors, as in *Noerr* and *Arlington*, but one where defendant's purpose was unlawful—to force plaintiffs to purchase his property at an escalated price. As stated in *Carpenters' Union v. Citizens Committee* (1928), 333 Ill. 225, 246:

> "No persons, individually or by combination, have the right to directly or indirectly interfere with or disturb another in his lawful business or occupation or for the sake of compelling him to do

some act which in his own judgment his own interest does not require. Losses willfully caused by another from motives of malice to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill or credit will sustain an action. It is unlawful and actionable for one man from unlawful motives to interfere with another's trade by fraud or misrepresentation, physical or moral intimidation or persuasion, with intent to inflict an injury which causes loss. Though the complainants had the right to be free from wanton disturbance and annoyance in seeking to enjoy the fruits and advantages of their labor, industry, and skill, they have no right to be protected against competition. While a person must submit to competition, he has the right to be protected from malicious interference with his business."

The court in *Carpenters' Union* noted that the parties were not competitors in any sense, thus no justification for the defendant's acts could be founded on that rationale. Likewise, plaintiffs and defendant are not competitors in the case at bar.

Defendant argues that the only proper test is the "sham" test as stated in *Sierra*. I think the evidence in the record sufficiently met this test and proved that defendant was not seeking merely to influence governmental action, but was attempting to coerce plaintiffs by defaming and destroying their business, knowing the accusations were false or making them with a reckless disregard of their truth or falsity. Defendant's activities went far beyond a desire to obtain for himself a wholesome environment and a safe transportation system, and in my opinion were properly enjoined to the extent stated herein.

To that extent I would affirm the trial court.