LILY OF THE VALLEY SPIRITUAL CHURCH, by Ruby Reed, *et al.*, Trustees, Plaintiff-Appellee, v. EDYTHE M. SIMS, Defendant-Appellant.

First District (2nd Division)   No. 87—0676

Opinion filed April 26, 1988.

M. Fred Friedman, of Chicago, for appellant.

Joseph L. Baime, of Baime & Baime, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

After a hearing held pursuant to notice and petition for temporary relief, the trial court entered a permanent injunction in favor of plaintiff Lily of the Valley Spiritual Church (hereinafter Church) and its trustees and against defendant. Defendant appeals from the final injunctive order entered on December 4, 1986, and modified on February 27, 1987.

The Church is an Illinois corporation, organized as a religious corporation in 1937 pursuant to the provisions of "An Act concerning corporations" (Religious Corporation Act) (Ill. Rev. Stat. 1937, ch. 32, par. 164 *et seq.*).

The founder of the Church, Rev. Lucretia L. Smith, had been the pastor of the Church from the time of its inception to the year 1985. In the summer of 1985, she became seriously ill and was hospitalized from July 20, 1985, to September 5, 1985. Because of her illness and resulting disability, she has been unable to perform her duties as pastor since July 1985. Rev. Smith was adjudged a disabled person by the probate division of the circuit court of Cook County.

In 1958, Pastor Smith appointed defendant, Rev. E. M. Sims, to serve the Church as a pulpit minister and financial secretary. As financial secretary, she was responsible for the financial management of the Church. As pulpit minister, Rev. Sims sat on the pulpit during each service and conducted the service on the fourth Sunday of each month.

Rev. Smith's adjudication as a disabled person created at least a temporary vacancy in the office of pastor. The Church and its board of trustees took certain actions regarding the management of the Church and the control of its property.

A bank resolution was adopted at a special meeting of the board held on September 18, 1985. This resolution required two signatures for checks in excess of $300 drawn on the Church account. The authorized signatories were defendant, Rev. Sims, and one of the designated trustees.

Another special meeting of the board was held on November 11, 1985. This resolution repealed the September 18, 1985, resolution and authorized new signatories for the Church bank account. The name of the defendant, Rev. Sims, was removed as an authorized cosigner.

On November 25, 1985, at a meeting of the Church membership, Rev. Robert Wing was elected as the acting pastor of the Church. He continued to serve in that capacity throughout the period involved by these proceedings.

Throughout this time, Sims refused to acknowledge Rev. Wing as the pastor of the Church. She also refused to recognize the status of the trustees. She was informed that if her disruptive conduct continued, she would be removed as pulpit minister. Thereafter, in April 1986, Sims was relieved of her duties as a pulpit minister, but was permitted to serve as a floor minister.

Sims refused to accept her demotion and continued as pulpit minister. In July 1986, Sims was notified that her status as a member of the Church was cancelled. On July 13, 1986, disregarding the fact that she had been relieved of her duties as a pulpit minister, the defendant entered the pulpit and, although requested by the pastor to leave, refused to do so. When told that if she did not remove herself the pastor would call the police, she responded, "Call the police." The police were summoned. Upon arriving, they polled the members in the Church to determine if they desired Sims to remain. Following the polling, Sims was informed that the members of the Church requested that she leave.

On the following Sunday, Sims again entered the pulpit and was requested by the pastor to leave that area, which she refused. Then a

group of six or seven persons, not members of the Church, came in and walked down the aisle. Three of the strangers came to the pulpit. One of those who entered the pulpit, Bishop Turner, testified that Sims beckoned them to come forward. Turner took the alter sprinkler and sprinkled the congregation. The police were again summoned. The police suggested that an application for a restraining order should be made to the court.

On July 25, 1986, plaintiffs brought a petition for temporary relief. A hearing was held on a number of days between July 25, 1986, and December 2, 1986, culminating in a permanent rather than a preliminary injunction against Sims. The order reads in pertinent part:

> "Sims is specifically enjoined from interfering with the religious services of the congregation by making a public assertion of her claimed authority as pulpit minister; by action such as contesting the right of Rev. Wing, the duly elected pastor, to designate the method of religious services; *** by conducting herself in a way that would interfere with the ability of the congregation to peacefully worship pursuant to its customs, ceremonies and practices."

In direct violation of the bank resolution and without any authorization from the Church, on November 25 and 26, 1985, Rev. Sims drew checks on the Church account payable to cash in the total sum of $25,000. Rev. Sims testified that she used $6,000 of the Church's funds to pay repair bills and put the balance in her safe deposit box and her bank account. On December 30, 1985, this action was instituted to recover the Church's funds from Rev. Sims.

On appeal, defendant contends that the final orders of December 4, 1986, and February 27, 1987, must be reversed because the trial court exceeded its constitutional powers by acting on an ecclesiastical matter. Defendant's argument is misplaced.

■ When matters of religious doctrine and practice are at issue in property disputes involving hierarchical church organizations, civil courts must defer to any resolution of those issues reached by the highest authority within the church organization. (*Grace Evangelical Lutheran Church v. Lutheran Church-Missouri Synod* (1983), 118 Ill. App. 3d 151, 454 N.E.2d 1038, *cert. denied sub nom. Werling v. Grace Evangelical Lutheran Church* (1984), 469 U.S. 820, 83 L. Ed. 2d 38, 105 S. Ct. 91.) However, as long as no consideration of doctrine is involved in the dispute, States are free to adopt any one of various approaches for settling church property disputes, including a legal approach in which the court determines property ownership by applying general principles of property law, examining terms of local

church charters, statutes governing churches and other pertinent documents. Further, courts will interfere to protect a clergyman in the enjoyment of his office when his relationship with the church is such as to confer on him a property right in the office. *E.g. The First Church of Deliverance v. Holcomb* (1986), 150 Ill. App. 3d 703, 502 N.E.2d 298, *appeal denied* (1987), 115 Ill. 2d 540 (church properly granted injunction against former church board members interfering with current church management); *Bruce v. Hunter* (1961), 32 Ill. App. 2d 288, 177 N.E.2d 425 (abstract of opinion) (evidence sustained allegations of complaint that defendant trustees were duly elected, qualified, and acting trustees of incorporated church, and that plaintiff trustees held possession of realty and personalty of church without authority); 31 Ill. L. & Prac. *Religious Societies* §7 (1957).

▆ The Religious Corporation Act, under which the plaintiff Church was organized, states that "[t]he trustees shall have the care, custody and control of the real and personal property of the corporation, subject to the direction of the congregation." (Ill. Rev. Stat. 1937, ch. 32, par. 172.) The Church bylaws do not designate any affiliation or supreme church to which the plaintiff would be subservient. There is no evidence in the record, other than defendant's naked assertion, that the plaintiff Church is anything other than an independent, congregational religious society governed by its own rules. The Church bylaws provide a procedure for the election of a pastor when a vacancy occurs.

It is undisputed that the bylaws were properly followed in the election of Rev. Wing as acting pastor. Defendant challenges the authority of the Church and submits that the selection of the new pastor was the function of a hierarchical authority. The evidence does not support this argument.

However, a significant issue does remain. We must determine whether the trial court properly entered a final rather than a temporary order.

▆ The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held. (*Bismark Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 415 N.E.2d 517, *appeal denied* (1981), 85 Ill. 2d 555.) At a hearing on a complaint seeking a preliminary injunction, the trial court should not decide the merits of the case (*Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795), for at such a hearing, all of the evidence on a particular issue need not necessarily be presented (*Roche Bros. v. Garrigan* (1980), 88 Ill. App. 3d 107, 410 N.E.2d 338).

It has been held that notice given after the conclusion of the hearing for temporary relief, that may result in a permanent injunction, is insufficient and raises due process concerns. (*Gellman v. State of Maryland* (4th Cir. 1976), 538 F.2d 603.) Although there may be no indication that the party would have produced further testimony if notified earlier that the entire case would be disposed of after a single hearing, this does not sanction the court changing, *sub silentio*, the nature of the game at halftime. *T.M.T. Trailer Ferry, Inc. v. Union de Tronquistas de Puerto Rico, Local 901* (1st Cir. 1971), 453 F.2d 1171, 1172.

■ When the hearing began in the court below, it was intended to be a hearing for a temporary restraining order or preliminary injunction. At no time during the hearing was either party informed that the court would make a determination regarding a permanent injunction. At no time during the hearing was either party informed that the court was conducting a hearing on the merits.

It is clear that the parties thought they were presenting testimony sufficient to support their position regarding a temporary restraining order. The court, however, without explanation, issued a permanent injunction. Based on the foregoing case law, it is clear that Rev. Sims was denied due process and should be given an opportunity to present her entire case.

■■ Further, Rev. Sims maintains that the portion of the order which prohibits her from "making a public assertion of her claimed authority of a pulpit minister" or "contesting the right of Rev. Wing *** to designate the method of religious service" or "conducting meetings, formal or informal," or "conducting church business including preparation of budgets, collections of money, holding of benefits, disbursing of funds for church maintenance and welfare" is unconstitutionally overly broad in that they are all protected first amendment rights. She maintains that the portion of the order preventing her from "conducting herself in any way that would interfere with the ability of the congregation to peaceably worship pursuant to its customs, ceremonies and practices" is unconstitutionally vague.

An overly broad action is one that is designed to prohibit activities which are not constitutionally protected, but includes within its scope activities which are protected by the first amendment. Where first amendment rights such as free speech or the free exercise of religion are involved, the injunction must be narrowly tailored to meet its legitimate objectives and should not prevent the defendant from exercising his rights. *People ex rel. Traiteur v. Abbott* (1975), 27 Ill. App. 3d 277, 327 N.E.2d 130.

An order is vague if it possibly prohibits protected speech or leaves an individual without clear guidance as to the nature of speech for which he can be punished. It has been held that the language "interfering in any way" may comprehend many actions which one could engage in without transgressing the bounds of legitimate behavior. *Streif v. Bovinette* (1980), 88 Ill. App. 3d 1079, 411 N.E.2d 341.

In the case at bar, the trial judge recognized that, despite the language of the order, Rev. Sims has the right to lobby in a proper forum and speak to others regarding the Church. However, the order was never modified to clarify that right. The order below should be modified to define or particularize the rights to be preserved.

Therefore, although our review of the record finds the evidence proper and sufficient to sustain a preliminary injunction, we must reverse the final orders on the merits and remand the cause for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

HARTMAN, P.J., and SCARIANO, J., concur.