STANLEY D. PARR *et al.*, d/b/a Redwood Motor Inn, Plaintiffs-Appellees, v. MICHAEL NEAL, Warden, Danville Correctional Center, *et al.*, Defendants-Appellants.

Fourth District   No. 4—88—0856

Opinion filed August 4, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert Ruiz, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellants.

Charles C. Hall, of Welsch & Hall, of Danville, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On June 2, 1986, plaintiffs Stanley D. Parr and Gracie Parr, doing business as Redwood Motor Inn, filed a complaint in the circuit court of Vermilion County against defendants Michael Neal, warden of the Danville Correctional Center, and Michael Lane, Director, Department of Corrections, State of Illinois. Plaintiffs alleged defendants had authorized, constructed, and operated a firing range at the Danville Correctional Center (Correctional Center) which was adjacent to property owned by plaintiffs. This property was used by plaintiffs in the operation of a motel. Plaintiffs contended the operation of the range constituted a nuisance and requested the defendants be enjoined from further operation of the range. The case was subsequently tried at bench upon a second-amended complaint alleging the firing range was a danger to personal safety and a private nuisance.

On August 10, 1988, the circuit court entered an order permanently enjoining defendants "from firing weapons on the aforesaid range *at its present location.*" (Emphasis added.) On September 9, 1988, defendants filed a motion for reconsideration and clarification. The motion alleged that (1) the relief was "not so confined as to achieve its purpose at the least burden to the defendants"; and (2) the order did not clearly "establish whether any firing range may be utilized in the present location." After a hearing on the motion, the circuit court entered a further order on October 20, 1988, denying reconsideration of its prior order but clarifying that order by stating that order "permanently enjoined the *present use of the weapons fir-*

*ing range."* (Emphasis added.)

Defendants have appealed maintaining, much as they did upon request for rehearing, that the order enjoining the use of the range was "impermissibly overbroad." They rely upon the following language of the fifth district:

> "The restraint imposed by an injunction should not be more extensive than is reasonably required to protect the interests of the party in whose favor it is granted, and should not be so broad as to prevent defendant from exercising his rights." (*People ex rel. Traiteur v. Abbott* (1975), 27 Ill. App. 3d 277, 282-83, 327 N.E.2d 130, 134.)

Defendants do not seriously dispute that the allowance of some injunctive relief by the circuit court was sufficiently supported by the evidence. For reasons we subsequently explain, we conclude the award by the trial court of the injunction, in its full force, was not contrary to the manifest weight of the evidence and must be affirmed.

■ On appeal, defendants still express concern as to the meaning of the injunction. They express concern as to whether they can make continued use of a classroom which is located on the range facility. When the latest order in regard to enjoining "the present use" of the range is considered within the context of the earlier order prohibiting the firing of weapons at the "present location" and, in view of the evidence, we deem it clear the court did not enjoin use of the classroom as long as weapons are not fired from it.

■ We interpret the order of the court to be that the Department of Corrections cannot use the firing range for the firing of weapons unless the injunction is subsequently modified. The circuit court has continuing power to modify this injunction upon a showing of a sufficient change in the structure of the range to alleviate the dangers which now exist. (*Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc.* (1941), 312 U.S. 287, 85 L. Ed. 836, 61 S. Ct. 552; *Material Service Corp. v. Issacs* (1962), 25 Ill. 2d 137, 183 N.E.2d 164.) We express no opinion as to what change in circumstances would be necessary to support or to require such a modification.

The evidence of the layout of the firing range was undisputed. The range was some 100 yards in length running from the west, where most firing took place, to the east where the farther targets were located. The range was on the south border of the Correctional Center and bordered plaintiffs' property, a 40-acre tract, on the south of the Correctional Center. The closest point of the range to the motel was approximately 900 feet, but the motel's sewer plant was 800 feet

from the range, and a water well was 600 feet away. Considerable other development existed in the area of the Correctional Center, but none was as close to the range as plaintiffs' motel.

At the east end of the range was a berm 40 feet in height. Affixed to the berm at a height of about 12 feet from the bottom was a timber "eyebrow" extending perpendicular to the slope of the berm to form "an upward bullet trap" for bullets aimed at targets below. A fence made from railroad ties and having a height of seven or eight feet surrounded the range. The range also contained two "overhead baffles of pea gravel and plywood sandwich construction."

An important and controversial feature of the range was a practice tower, nearly as tall as the berm. This was used for firing simulating that which guards would do with mostly .223 caliber rifles but also with rifles and .37 millimeter gas guns. The tower was open on three sides. A former Department of Corrections employee, impeached because she had been fired by that department, testified she had seen a Correctional Center lieutenant fire numerous .223 rifle rounds from the tower to the ground merely to waste ammunition.

The principal support for the issuance of the injunction came from two sources. One was the testimony of plaintiff Stanley D. Parr. The other source was the testimony of Robert Lucas, an expert witness with a background of experience in security system design and law enforcement and security training. He testified he had taken numerous police science and firearms instruction courses, was a trained shooter, and had been firearms instructor and range officer for the Peoria Heights police department. He testified he had prepared designs for the safe layout of firing ranges.

Plaintiff Stanley D. Parr testified he first noticed the range in early 1986 and that firing, heavy at times, had occurred thereafter with some of it occurring during the night. He stated that when firing occurred at night it was often accompanied by bright lighting and sirens, all of which bothered plaintiffs, their customers, and their employees. Parr described how, in November and December of 1986, on three separate occasions, with the use of a metal detector, he found projectiles in an area southwest of the range and some 50 feet into his land. He further testified that in March 1987 he found a shell casing some 75 to 100 feet into his land. He also described how, on June 24, 1988, he found a projectile and two copper pieces at a point approximately 25 feet into his land from the border of the range.

The items found by Parr was brought into court and admitted into evidence. Lucas identified the items found in 1986 and 1987 as (1) spent soft metal slugs consistent with wood cutter ammunition; (2) a

spent .38 millimeter gas grenade; and (3) a .37 millimeter empty casing. The evidence had established that the weapons used at the range consisted of (1) the double action revolver, caliber .28, .38, ruger, mini 14; (2) the 12 gauge shotgun; (3) the .37 millimeter grenade launcher; and (4) "the 30 ought six sniping rifle." Lucas testified to an opinion that each of the items found by Parr was of the type fired from the range and that these projectiles had, in fact, been fired from the range. Neal agreed with Lucas that the projectiles were of the type used at the range but was of the opinion they had not, in fact, come from the range. Lucas identified at least one of the projectiles as coming from each of the types of weapons used at the range, except none were stated to have been fired by a shotgun.

Lucas was greatly concerned because rifle fire was permitted at the range. He explained that a rifle bullet of the kind fired there had a "killing range" of nearly one mile. He explained the various ways in which a gun can fire without intent of the person handling the gun. Lucas' concerns were compounded by the presence of the tower. He deemed it significant that the tower was almost as high as the berm and was open on three sides. He considered any unintended firing of any weapon from the tower to be very dangerous but deemed such firing of a rifle to be the greatest hazard because of its range. Lucas expressed an opinion that the placement of a rifle range in an area as developed as that here was very rare indeed. Lucas found no substantial fault with the rules established for the operation of the firing range, but he considered the existence of the various projectiles on plaintiffs' land to indicate the facility was not sufficient to prevent fired projectiles from landing outside the range.

In the course of his testimony, Lucas discussed the changes necessary to make the range safe. At one point he stated the range was "already safe for shotguns to discharge so long as the pellet size is kept small." At another time he indicated that, by extending the roof of the baffle and adding a bullet trap, "there's no reason why the facility could not be used for shotguns and pistols." Defendants argue this means that, even by the admission of plaintiffs' key witness, pistol and shotgun fire from ground level should now be permitted at the range. They contend an injunction which did not exclude those uses would be the least restrictive restraint necessary to give plaintiffs any relief to which they are entitled.

Significantly, Lucas' statements were qualified by limiting shotgun fire to that with small pellets and other shotgun and rifle fire to further improvement of the range. Any permission to use shotguns if limited to use of very small projectiles would be of questionable value

to defendants and would have permitted a type of firing which would be hard to police. The improvements sufficient to justify greater use were not present at the time the court ruled. We also note that projectiles from pistols were among those found on plaintiffs' land.

As defendants point out, recently in *Kolstad v. Rankin* (1989), 179 Ill. App. 3d 1022, 534 N.E.2d 1373, this court remanded a cause for modification of the injunctive order where we deemed the restrictions placed upon the operation of a firing range were unduly severe. While defendants are correct that, there, the precautions taken to guard against stray bullets were in some respects less than here, there, the area involved was less built up, and the evidence that projectiles had been landing outside the range was less than here.

Defendants properly point out that, before a court may enjoin a nuisance, it must balance the harm to the defendant against the benefit to the plaintiff. (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 28, 426 N.E.2d 824, 837.) We recognize the need the Department of Corrections has for continued weapons training and practice for its employees at the Correctional Center. We are also aware of the greater efficiency and economy which results when those exercises can be conducted on the grounds. We also recognize the expenses incurred in developing the range. However, this must be balanced against the showing made by plaintiffs of danger to people. The trial court saw and heard the witnesses and appraised the worth of their testimony. The court was then in a better position to perform that balancing than we are. We do not find the result of the injunctive order in all of its restrictiveness to be contrary to the manifest weight of the evidence or to be a breach of discretion. *Brown v. Commercial National Bank* (1969), 42 Ill. 2d 365, 247 N.E.2d 894.

As we have indicated, we affirm for the reasons stated.

Affirmed.

LUND and SPITZ, JJ., concur.